## BIGGS et al. v. MAULDING.

(Court of Civil Appeals of Texas. El Paso. April 25, 1912. Rehearing Denied May 22, 1912.)

1. WATERS AND WATER COURSES (§ 254*)—IRRIGATION PURPOSES—CONTRACTS — RIGHT OF LESSEE.

Where a water company contracted to give an owner of premises a permanent right to water, on payment of a certain sum, and provided that the "vendee" should be entitled to receive water during the life of the agreement, a lessee of the premises before the amount provided had been paid obtained no right to the water and could not maintain an action for a failure to supply.

[Ed. Note.—For other cases, see Waters and Water Courses, Cent. Dig. § 311; Dec. Dig. § 254.*]

2. APPEAL AND ERROR (§ 19*) — REVIEW — QUESTIONS CONSIDERED.

A court on appeal will not review the action of the lower court in sustaining an exception to a petition, where it was superseded by an amended petition upon which the cause was tried.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 63–80; Dec. Dig. § 19.*]

3. WATERS AND WATER COURSES (§ 263*)—IRRIGATION — FAILURE TO SUPPLY WATER UNDER CONTRACT—MEASURE OF DAMAGES.

In an action for a breach of a contract to furnish water for irrigation, the cost of marketing, as well as the cost of raising and harvesting, may be shown and deducted from the damages for the failure of the crop which would have been raised on the premises.

[Ed. Note.—For other cases, see Waters and Water Courses, Cent. Dig. § 324; Dec. Dig. § 263.*]

4. APPEAL AND ERROR (§ 843*)—REVIEW—QUESTIONS NOT NECESSARY TO DECISION.

Where, on an appeal from a judgment in favor of a plaintiff in an action for a breach of a contract to supply water for irrigation, the court reversed and remanded on the ground that the contract did not attach to the premises, and that the plaintiff as lessee consequently had no rights thereunder, the court will not pass on an assignment raising the insufficiency of the evidence to support the verdict, in that it did not show that the plaintiff would have made a profit from his crops if properly irrigated.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3331–3341; Dec. Dig. § 843.*]

5. APPEAL AND ERROR (§ 1177*)—DISPOSITION OF CAUSE.

Where, in an action for a breach of a contract to supply water for irrigation, the plaintiff could not recover under the contract because he was not a privy thereto, a reversal and remand is warranted, rather than the rendering of judgment, where there are suggestions in the plaintiff's pleading and in the evidence upon which he might be able to recover upon an oral contract entirely independent of the written contract declared on.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4597–4604, 4606–4610; Dec. Dig. § 1177.*]

Appeal from District Court, Ward County; S. J. Isaacs, Judge.

Action by J. G. Maulding and another against S. V. Biggs and others. From a judgment for J. G. Maulding, defendants appeal. Reversed and remanded.

A. J. Wilson, of Barstow, and Ross & Hubbard, of Pecos, for appellants. J. E. Starley, of Barstow, for appellee.

HIGGINS, J. J. G. Maulding, appellee, and P. Maulding, filed suit against S. V. Biggs and others for damages for breach of an alleged contract upon part of appellants to furnish to the Mauldings water for the irrigation of 50 acres of land to be planted during the year 1910 in alfalfa and cotton. Upon trial before a jury, verdict was returned in favor of J. G. Maulding for $675, upon which judgment was accordingly rendered. Under the instruction of the court that plaintiff P. Maulding not having shown any damages accruing to himself, a verdict against him was rendered. The 50 acres of land to which it was contended appellants were obligated to furnish water for irrigation purposes was owned by P. Maulding, and the same was leased by him for the year 1910 to J. G. Maulding. The contract sued upon was in writing, and was entered into between S. V. Biggs as vendor and P. Maulding as vendee. In the first paragraph thereof it was provided: "The vendor agrees to sell to the vendee, on the terms and at the price hereinafter mentioned, a water right under the vendor's irrigation system, covering 50 acres of land. * * * The vendor agrees to deliver said water right to the vendee upon the completion of payment therefor, as herein provided; that the essential features of said water right in general

are contained in a memorandum hereto annexed marked 'Exhibit A' and made a part hereof." The second paragraph provides that the vendee is to pay $500 for the water right, as follows: $100 in cash, and balance in four equal installments of $100 each, with interest, evidenced by the promissory notes of the vendee, due in one, two, three, and four years after date. The third and fourth paragraphs of the contract read as follows: "(3) The vendor agrees that the vendee shall be entitled to receive, during the life of this agreement, and the vendor agrees that he will deliver, water on the vendee's said land on or before May 15, 1908, and thereafter so long as this agreement is in force, at one dollar per acre per annum for such land as is cultivated during the nine months prior to October 1st, in each year, said payment to be made October 1st, in each year, but nothing herein contained shall be construed as locating a permanent water right on said land or one which shall become appurtenant to the land; but that upon completion of payment of the purchase price of said water right as aforesaid said water right shall be delivered in accordance with the terms of this agreement and shall become appurtenant to said land. (4) This agreement shall bind the parties hereto, their heirs, personal representatives and assigns."

[1] The terms and conditions of the memorandum attached to this contract have no bearing upon any obligation upon the part of Biggs to furnish water pending the completion of the payment of the moneys provided for in the contract above described. Until such payment was made, the right of P. Maulding and of any one claiming under him to receive water for the irrigation of the land is controlled entirely by the third paragraph of the contract quoted above in full, and, to state it succinctly, the only contract between Biggs and P. Maulding existing in 1910, when the breach to furnish water is alleged to have occurred, was a contract by Biggs, at a future date and for a certain consideration, to enter into a contract to thereafter furnish water permanently for the irrigation of the 50 acres of land, the obligation to enter into and make this contract being dependent upon payment by Maulding of the moneys specified in the second paragraph; and pending the completion of such payment and the accruing of the right by Maulding to demand the permanent water right, Biggs' obligation to furnish water is measured by the provisions of the third paragraph. J. G. Maulding having leased the 50 acres from P. Maulding for the year 1910, it is contended that he was subrogated to the rights of his lessor under said contract and could demand of Biggs that he furnish water for irrigation, as provided in the third paragraph. This contention is upon the theory that the contract between the parties was not personal in its nature to P. Maulding, but that it was appurtenant to the land, passing to his tenant or assignee. A casual inspection of the third paragraph, however, will disclose that such was not its nature, as the first paragraph provides that "the vendor agrees that the *vendee* shall be entitled to receive during the life of this agreement, and the vendor agrees that he will deliver water, etc.," and it is further expressly stipulated that nothing contained in the contract was to be construed as "locating a permanent water right on said land, or one which shall become appurtenant to the land," and the succeeding clause provides that the water right conforming to the memorandum attached to the contract (which was the permanent contract) was to be delivered upon completion of payment of the purchase price, and that that should become appurtenant to the land. It thus very clearly appears that pending the accrual of the right of P. Maulding to demand the permanent water right contract, conforming to the provisions of the memorandum, the right to demand water for the irrigation of the 50 acres of land was personal to P. Maulding, and was in no wise appurtenant to the 50 acres, or inuring to the benefit of a tenant or assignee. Article 3125 of the Revised Statutes of 1895, relied upon by appellee, provides that "the sale of the permanent water right shall be an easement to the land, and pass with the title thereof, and the owner thereof shall be entitled to the use of the water upon the terms provided in his or their contract with such person or corporation." The inapplicability of this statute is readily apparent, because the sale of the permanent water right had not been consummated and the contract between the parties for the furnishing of water was a temporary one, controlling until the payments provided for in paragraph 2 had been made, when the vendee would have the right to demand a permanent water right contract, which would be subject to provisions of article 3125. The fourth paragraph, it is true, provides that the contract was binding upon the assigns of the parties, but this does not affect the clear terms and import of the third paragraph limiting to P. Maulding the right to demand water pending the accrual of his right to demand a permanent water contract. To restate our views briefly, they are: In 1910 there was a contract existing between Biggs and P. Maulding for the sale by Biggs to Maulding of a permanent water right contract for a certain consideration. Pending final payment by Maulding of the purchase price of this permanent water right, Biggs obligated himself to furnish water to P. Maulding for irrigation of the 50 acres; but this obligation to furnish water was personal to P. Maulding, in no wise appurtenant

to the land, or inuring to the tenants or assigns of Maulding.

The court in his charge to the jury assumed that J. G. Maulding had a right to demand water for the irrigation of the land by virtue of the contract existing between Biggs and P. Maulding, and for the reasons indicated, this was error, and the assignments raising this question are sustained.

[2] The first assignment complains of the action of the trial court in sustaining an exception to the plaintiff's first amended original petition. This petition was superseded by the second amended original petition, upon which the cause was tried, and the question presented by this assignment is therefore purely academic and will not be considered. It would be useless for us to inquire into the correctness of the court's action in passing upon exceptions to a petition which is superseded by subsequent pleadings.

[3] The only objection to the court's charge upon the measure of damage which could possibly have any merit is that it fails to instruct the jury to deduct the cost of marketing the crop from the value of the crop which would have been raised on the premises. The court instructed that the cost of raising and harvesting the crop should be deducted. Appellee insists that the evidence fails to disclose any marketing cost, and, if this is correct, the omission noted would be immaterial. We deem it unnecessary to read the entire statement of facts in order to determine whether the testimony did show any marketing cost, as upon retrial this should not arise.

[4] In view of the disposition made of this appeal, we deem it improper to pass upon the assignment which contends that the evidence is insufficient to support a verdict in favor of plaintiff, because it does not show that he would have made a profit from his crops if properly irrigated.

[5] From what has been said, it is clearly apparent that we are of the opinion that plaintiff J. G. Maulding cannot recover upon the written contract declared upon by him, and it would therefore ordinarily be proper to reverse and render the case. There are suggestions, however, in the plaintiff's pleading and in the evidence, upon which he might be able to recover, based upon an oral contract entirely independent of the written contract declared upon. We do not mean to intimate that the testimony is sufficient to sustain a finding that there was an independent oral contract, but make this statement as explanatory merely of our action in reversing and remanding instead of rendering.

Reversed and remanded.

McKENZIE, J., not sitting.