## WALDO v. GALVESTON H. & S. A. RY. CO.
### No. 1352—5908.

Commission of Appeals of Texas, Section B.
June 1, 1932.

Fulbright, Crooker & Freeman, of Houston, for plaintiff in error.

John T. Garrison, Arterbury & Coolidge, and Garrison & Watson, all of Houston, for defendant in error.

LEDDY, J.

Plaintiff in error was employed by the defendant in error in a clerical position. His

work was performed in a room where a number of other employees were engaged in the discharge of their respective duties. While so engaged, one of his coemployees shot with a rubber band a wire clip, which struck the plaintiff in error in the eye, so seriously injuring it as to necessitate the removal of the eyeball.

In this suit against the railway company to recover damages for the injury thus sustained, he alleged two grounds as a basis for recovery:

First, that said company failed to provide him a reasonably safe place in which to perform his duties, in that it negligently permitted other employees to engage in the dangerous practice of shooting wire paper clips.

Second, that prior to his injury certain employees, working in the same department and on the same floor with him, engaged in the custom and practice of shooting these clips over the room in which other employees were working; that they were shot with such force as to be dangerous to the employees working in such department. It was averred that plaintiff in error informed defendant in error's chief clerk, in charge of and supervising the employees in said department, who had power to employ and discharge them, of the conduct of these employees in shooting such clips and of the danger to which it subjected other employees and was told by said chief clerk that he would put a stop to such practice by issuing positive instructions against the same, but that he negligently failed to take any steps whatever to stop such practice. That, within a few days after he had so notified said chief clerk, one of the employees working near plaintiff in error was hit in the nose with a wire clip shot by some other employee with such force as to penetrate his nose and cause it to bleed profusely; that immediately after such happening plaintiff in error again informed defendant in error's said chief clerk of the injury received by this employee as a result of the continuance of the dangerous practice of shooting these clips, and stated to him that, if immediate steps were not taken to put a stop to such practice, some other employees were liable to be severely injured, and that he would no longer work under such conditions unless said chief clerk, or some one else in authority, would take immediate action to stop such practice. Again the chief clerk promised that immediate action would be taken by him to stop such practice, and plaintiff in error continued in his work, relying upon such promise upon the part of said chief clerk to stop such dangerous custom and practice. It was then averred that, on the day following this conversation with the chief clerk, while plaintiff in error was engaged in the performance of his work as an employee of defendant in error, he was hit in the right eye with a wire paper clip shot by one of the employees of defendant in error, which clip was propelled with such force as to penetrate the ball of his right eye, inflicting the injury complained of.

It was further alleged that the railway company was guilty of negligence in failing and refusing to issue instructions to the employees with whom plaintiff in error was working, warning them of the danger of shooting such clips, and instructing them to cease doing so, and that especially did this duty devolve upon defendant in error's representative, after he had been notified of such dangerous practice and requested to take action to prevent a continuance of same.

The issue of liability of defendant in error was submitted to the jury upon the following questions:

"Special Issue No. 1. At the time and on the occasion in question, were the premises in which plaintiff was working a reasonably safe place in which to work? Answer 'it was' or 'it was not' as you find the facts to be.

"Special Issue No. 2. If you have answered Special Issue No. 1, 'it was not,' then answer: Was the failure of the defendant to furnish plaintiff a reasonably safe place in which to work negligence? Answer 'it was' or 'it was not' as you find the facts to be.

"Special Issue No. 3. If you have answered Special Issue No. 2, 'it was,' then answer the following: Was such negligence a proximate cause of plaintiff's injuries? Answer 'it was' or 'it was not' as you find the facts to be."

Upon favorable answers to these issues, judgment was rendered in favor of plaintiff in error for the amount found by the jury as damages sustained by him by reason of his injuries.

Defendant in error duly perfected its appeal to the Court of Civil Appeals. Upon the case reaching that court, it certified for the determination of the Supreme Court the following questions:

"(1) Did the inquiries submitted by the Court embody such an issue of fact arising out of the pleadings and evidence as could, upon affirmative answers, properly constitute a predicate for liability?

"(2) Were the questions asked the jury a sufficient submission of the issue of negligence presented by the pleadings and evidence?"

In an opinion rendered by Section A of the Commission of Appeals, negative answers were given to both of these questions. 119 Tex. 377, 29 S.W.(2d) 323. It was there decided that the duty devolving upon the master to furnish his servant a reasonably safe place to work had no application to the facts of this case, as such rule has reference only to defects in the premises where the servant performs his duties, and in the tools, equip-

ment, and appliances used by him in the necessary discharge of his duties.

Upon return of these answers to the certified questions, the Court of Civil Appeals delivered an opinion reversing the judgment of the trial court and rendering judgment in favor of defendant in error. 35 S.W.(2d) 447. A writ of error has been granted by the Supreme Court to determine the correctness of that action.

The honorable Court of Civil Appeals conceived that it was proper to render judgment in favor of defendant in error, because plaintiff in error, under the doctrine announced in Ormsby v. Ratcliffe, 117 Tex. 242, 1 S.W.(2d) 1084, had waived the right to recover on account of the negligence of defendant in error in failing to stop the practice of clip shooting by not requesting the submission of such issue to the jury.

Defendant in error seeks to sustain the action of the Court of Civil Appeals in rendering judgment in its favor upon the reason assigned by that court, and asserts that such judgment was a proper one, for the further reason that the allegations of plaintiff in error's petition as to the duty devolving upon defendant in error to exercise diligence in stopping the practice of clip shooting, and the evidence adduced in support thereof, was insufficient to present an issue of liability on the part of defendant in error for plaintiff in error's injury. In other words, it is asserted that no duty devolved upon defendant in error to regulate the personal conduct of its servants in and about their place of work, because it appears they were engaged in a practice not within the scope of the duties of their employment.

All of the authorities agree that, when a servant turns aside from the prosecution of the master's work to engage in an affair of his own, he ceases for the time to act for the master, and becomes liable for his act in pursuing his own business or pleasure. Galveston, H. & S. A. Railway Co. v. Currie, 100 Tex. 136, 96 S. W. 1073, 10 L. R. A. (N. S.) 367.

Nor is the master required to assume that his employees, during the hours of their labor, will engage in sportive pastimes dangerous to other employees so as to place upon him the duty of promulgating rules to prevent the same. But we are not concerned here with an isolated instance of an employee turning aside from his employment to engage in shooting wire clips. Had plaintiff in error been injured as the result of such an act, there could be no question that his employer could not be held responsible therefor. We are dealing here with an altogether different situation. It is made to appear from the evidence adduced by plaintiff in error that the shooting of these clips had become a custom and practice among certain of defendant in error's employees. That such practice was fraught with danger to other employees is attested by the fact that, prior to plaintiff in error's injury, another employee, while in the active discharge of his duties, had been severely injured as a result of this habit. The representative of the company occupying the position of vice principal was informed of such practice and of the fact that it had already resulted in a painful injury to one of the employees. The company's representative in charge of and supervising the work of these employees had full power and authority to control their actions during the hours of their labor. According to plaintiff in error's view, he failed to take any action to stop this practice, although he promised to do so upon two occasions. As a result of such failure, plaintiff in error suffered a grievous injury. Under the facts and circumstances above recited, we have no hesitation in deciding that the railway company owed to plaintiff in error and other employees the duty to exercise reasonable diligence to prevent the continuance of a practice reasonably calculated to injure employees while actively engaged in the discharge of their duties. Such rule places no undue burden upon the master, and gives to the employee a protection to which he is fairly and justly entitled.

In the case of Mary A. Hogle v. H. H. Franklin Mfg. Co., 199 N. Y. 388, 92 N. E. 794, 32 L. R. A. (N. S.) 1038, it was held that a master may be guilty of negligence which will render him liable for injury to an occupant of adjoining property on account of a missile thrown from his factory window by his employee, if, with the knowledge of the habit of his employee to throw such missiles from the window, he fails to exercise reasonable care to stop the practice.

In the case of Swinarton v. Le Boutillier, 7 Misc. Rep. 639, 28 N. Y. S. 53, affirmed 148 N. Y. 752, 43 N. E. 990, a merchant was held liable for failure to use reasonable care to protect a customer coming upon his premises from injury by reason of pins being shot by a cash boy. The proof disclosed that he had failed to use proper caution to suppress a dangerous habit of the cash boys employed in his store of shooting pins at objects and persons, which habit and practice had existed for months and was known to such merchant.

The Supreme Court of the United States had before it, in the case of Fletcher v. Railway Company, 168 U. S. 135, 18 S. Ct. 35, 36, 42 L. Ed. 411, a suit for damages for personal injuries received by a person standing at the side of a railroad track resulting from an act of an employee of the company in throwing off some firewood which he had gathered for his personal use. It was contended by the railway company that the servant was not acting within the scope of

his employment or in furtherance of any business of the master in throwing off firewood for his personal use, and therefore it could not be made to respond in damages for an injury resulting from such act. The court, however, denied this contention and held the company liable. In discussing the question the court said:

"Negligence on the part of the company is the basis of its liability, and the mere failure to prevent a single and dangerous act, as above stated, would not prove its existence. * * *

"If the act on the car were such as to permit the jury to find that it was one from which, as a result, injury to a person on the street might reasonably be feared, and if acts of a life nature had been and were habitually performed by those upon the car to the knowledge of the agents or servants of the defendant, who, with such knowledge, permitted their continuance. then. in such case, the jury might find the defendant guilty of neg-. ligence in having permitted the act, and liable for the injury resulting therefrom, notwithstanding the act was that of an employee, and beyond the scope of his employment, and totally disconnected therewith. * * * It is not a question of scope of employment, or that the act of the individual is performed by one who has ceased, for the time being, to be in the employment of the. company. The question is, does the company owe any duty whatever to the general public, or, in other words, to individuals who may be in the streets through which its railroad tracks are laid, to use reasonable diligence to see to it that those who are on its trains shall not be guilty of any act which might reasonably be called dangerous, and liable to result in injuries to persons on the street, where such act could by the exercise of reasonable diligence on the part of the company have been prevented? We think the company does owe such a duty, and if, through and in consequence of its neglect of that duty, an act is performed by a passenger or employee which is one of a series of the same kind of acts, and which the company had knowledge of, and had acquiesced in, and if the act be, in its nature, a dangerous one, and a person lawfully on the street is injured as a result of such an act, the company is liable. Any other rule would, in our opinion, be most disastrous, and would be founded upon no sound principle."

The evidence in this case, viewed from plaintiff in error's standpoint, fastened liability upon the railway company because of its failure to use reasonable diligence to suppress the dangerous practice and custom of clip shooting by its employees. Such liability is not predicated upon the act of the employee in shooting the clip, as in so doing he had turned aside from his employment and was not engaged in the furtherance of his mas-

ter's business. The basis for the imposition of liability is the negligence of the railway company in failing to use proper precautions to put a stop to a practice known to be perilous to its employees after it had been fully apprised of the existence of such practice.

Defendant in error insists that, under the rule announced by the Supreme Court in the case of Medlin Milling Co. v. Boutwell, 104 Tex. 87, 133 S. W. 1042, 34 L. R. A. (N. S.) 109, under no theory of this case could it be held liable for the injuries received by plaintiff in error. The Supreme Court itself has given careful consideration to this contention, and, after doing so, authorizes us to say that any expression in that case in conflict with our holding in this case is expressly disapproved.

■ The rendition of the judgment in this case cannot be sustained by the application of the rule announced in Ormsby v. Ratcliffe, supra. In that case the Supreme Court had before it this provision of article 2190, R. S. 1925: "Upon appeal or writ of error, an issue not submitted and not requested is deemed as found by the court in such manner as to support the judgment if there is evidence to sustain such finding." In construing such provision the Supreme Court held that it did not apply to issues in a case "which are independent causes of action in themselves or controlling and independent grounds of recovery, or independent grounds of defense, but that it applies only to such omitted issues as are in accord with, and supplemental or incidental to, and which support, the issues of fact which were submitted and found by the jury, and upon which the judgment is based."

Where an appellate court finds it necessary for any reason to reverse a case, and the question is presented whether it shall remand the same for another trial or render judgment against the plaintiff in error, the rule declared in Ormsby v. Ratcliffe has no application. The only bearing the rule could have in this case is that it would operate to prevent the appellate court from presuming that the trial court found this unsubmitted issue in such a way as to support its judgment. It could not properly be used to prevent plaintiff in error from being entitled to a remand of the case where there has been an improper submission of the issues and the court has been compelled by reason thereof to reverse the judgment. When such a situation is presented, the question as to whether the court will remand the case for another trial or render judgment against the plaintiff in error should be determined solely from the viewpoint as to which action will subserve better the ends of justice. Gulf Ry. Co. v. Matthews, 32 Tex. Civ. App. 137, 73 S. W. 413, 74 S. W. 803; Ford Motor Co. v. Insurance Co. (Tex. Civ. App.) 285 S. W. 905; Baker v. Schafter (Tex. Com. App.) 231 S. W. 349; Camden Fire Ins. Co. v. Yarbrough (Tex.

Com. App.) 215 S. W. 842; Smith v. Patton (Tex. Com. App.) 241 S. W. 111; Biggs v. Maulding (Tex. Civ. App.) 147 S. W. 681; Associated Oil Co. v. Hart (Tex. Com. App.) 277 S. W. 1043, 1045.

In the latter case this Commission, speaking through Judge Speer, announced the rule applicable under circumstances similar to those here involved to be as follows: "It is the rule, where a judgment has been reversed, to remand to the trial court rather than to render, where the ends of justice will be better subserved thereby. Such remanding has often been ordered to supply additional testimony, to amend the pleadings, and even to show jurisdiction."

█ When the rule declared in the cases above cited is applied, it is evident that a proper disposition of this cause would have been a remand for another trial. Plaintiff in error's pleadings disclosed a cause of action against the railway company upon the grounds herein discussed. Upon the trial he adduced proof to sustain the cause of action so alleged. His right to recover upon such cause of action has not been determined, as the trial court submitted the case upon a wrong theory of liability. Under such circumstances, it is clear that the ends of justice will be subserved better by remanding the cause for another trial.

We recommend that the judgments of the trial court and the Court of Civil Appeals be reversed, and the cause remanded for another trial.

CURETON, C. J.

Judgments of the district court and Court of Civil Appeals are both reversed, and cause remanded, as recommended by the Commission of Appeals.

We approve the holdings of the Commission of Appeals on the questions discussed in its opinion.