## WORSHAM–BUICK CO. v. ISAACS et al.*
### No. 10740.

Court of Civil Appeals of Texas. Dallas.
Sept. 10, 1932.

Appellee's Motion for Rehearing Oct. 22, 1932.

Further Rehearing Denied Dec. 19, 1932.

Touchstone, Wight, Gormley & Price, of Dallas, for appellant.

Chamberlain, Green & Wade, of Dallas, for appellees.

VAUGHAN, J.

This is an appeal from a judgment rendered September 17, 1929, in favor of appellee Mrs. Mettie K. Isaacs for $11,500, and her son, appellee Alfred Isaacs, for $500, against appellant, Worsham-Buick Company, a private corporation, known at date of judgment as Morris-Buick Company, as damages for the death of R. W. Isaacs, the husband and father of appellees, who is alleged to have been killed September 9, 1928, through the negligent operation of an automobile charged to have been driven by an employee of said appellant.

*Writ of error granted.

Under a full statement of this case as to the issues presented by the pleadings and the facts established by the evidence, the two material questions upon which the right of appellees to recover against appellant entirely depended were certified to the Supreme Court March 7, 1931. On June 9, 1932, said questions were answered, the effect thereof being to hold that there did not exist in favor of appellees, or either of them, a cause of action against appellant. Worsham Buick Company v. Isaacs et al., 51 S.W.(2d) 277, which see for a full statement and discussion of the case. Therefore, under the holdings of our Supreme Court, supra, the judgment of the district court is reversed, and judgment is here rendered that appellees take nothing by their suit against appellant, and that the costs incurred in all courts in this case be, and the same are. hereby adjudged against appellees.

Reversed and rendered.

## On Appellees' Motion for Rehearing.

Appellant assumed to prosecute this appeal, with effect, upon two propositions, viz.:

"First proposition: In a suit by the family of R. W. Isaacs, deceased, to recover damages for his death based upon an allegation that he was run over and killed by the negligent operation of a car owned by the Worsham Buick Company, the defendant, Worsham Buick Company was entitled to an instructed verdict in its favor where the evidence showed that the car in question was being driven by one Al Simpson, an employee in the service department, on a certain Sunday when he was off duty and where the evidence further showed that at the time of the accident Simpson was not engaged in the discharge of any duty for Worsham Buick Company but on the contrary was driving said car to a picnic solely for his own pleasure.

"Second proposition: In a suit brought by a widow and children to recover damages for the death of their husband and father, alleged to have been killed through the negligent driving of an automobile of the defendant, it was error for the trial court in the face of defendant's duly presented objections, to refuse to instruct the jury that in answering the issue as to the amount of damages sustained by the plaintiffs, the jury should not take into consideration and allow damages for any grief, mental pain and anguish or loss of society suffered by the plaintiffs."

The scope and effect of this appeal, as viewed by appellant's attorneys, is fairly presented by this quotation from appellant's brief, viz.: "The attorneys for plaintiffs evidently recognized that there was nothing to their first theories of recovery for at the conclusion of the testimony plaintiffs made a motion for an instructed verdict, the ground of which was that the defendant had entrusted to Al Simpson one of its automobiles bearing a demonstrator number and that at the time of the accident Simpson was not using same for demonstration purposes, it being urged by plaintiffs in the motion that the use of a demonstrator automobile for purposes other than demonstration, rendered the defendant liable as a matter of law for any damages caused by the operation of the car even though the facts showed that Simpson was using the car on Sunday for his own personal pleasure and was doing nothing which was in any way connected with his employment for the defendant. The court submitted to the jury only issues of damages in favor of Mrs. Isaacs and Alfred Isaacs. The jury answered $11,500.00 for Mrs. Isaacs and $500.00 for Alfred Isaacs. The court then proceeded to render judgment in favor of plaintiffs for these sums reciting in the judgment that there were no controverted issues for the jury so far as liability was concerned. Defendant excepted to the charge of the court for many reasons, among others on the ground that no issues at all should be submitted to the jury but an instructed verdict should be given for the defendant. The trial court held with the plaintiffs on their contention that permitting Al Simpson to drive a car bearing a demonstrator number for his own personal pleasure on Sunday made the defendant liable as a matter of law for any resulting damage, regardless of any question of proximate cause connected with the accident."

Appellees, in their brief, after briefly setting out the five grounds of negligence alleged to have been committed on the part of Al Simpson, as the agent of appellant in the course of his employment, followed same with the statement: "Proof was offered on all such theories by plaintiffs, sufficient to carry the case to the jury on each and all, but at the close of the testimony the uncontroverted evidence showing that on some of such theories, the defendant was liable, as a matter of law, the plaintiff moved that the court so hold, and to submit to the jury only the question and measure of damages. This motion being sustained by the court, only the measure of damages was submitted to the jury."

Therefore, this court did not look beyond the briefs of the parties to ascertain the condition of the record in any other respects until the submission of appellees' motion for rehearing. The record discloses that, in addition to the ground of negligence upon which we based the questions certified, and upon the answers thereto, the judgment, reversing and rendering this cause in favor of appellant, appellees, among other additional grounds of negligence, alleged the following: "Moreover, said defendant, corporation, was guilty of wrongful acts and conduct and negligence in that as such owner of such machine and potentially dangerous instrumentality, it intrusted to Allen J. Simpson such machine and permitted him to take the same from the

premises of the defendant, and consented that he so take it, and to use, drive, control and operate such machine over and along the public streets of the city of Dallas, Texas, knowing at the time that said Allen J. Simpson was an unfit and incompetent person to have and use or to drive, control and operate such machine over and along the public streets of the said city of Dallas, Texas, and knew that said Allen J. Simpson was in the habit of becoming under the influence of intoxicating liquors, and knew that he had on previous occasions driven and operated automobiles in defendant's custody over the streets of said city while under the influence of intoxicating liquors, and knew that while so driving one of its automobiles he had wrecked such automobile on account of being drunk and reckless and unfit to operate such an instrument when in such condition, yet, the defendant, corporation, so knowing the above facts intrusted said· automobile to said Simpson, and the said Allen J. Simpson while in control of said automobile and while same was in operation over and along the public streets of the city of Dallas, Texas, operated, and caused same to be operated, at a speed of about 70 miles per hour and far in excess of the speed allowed by law, at which time said Allen J. Simpson (as well as any other person who may have been an occupant of such car) was drunk and under the influence of intoxicating liquors, and that by reason of the negligence of said defendant and said Allen ·J. Simpson aforesaid, proximately caused the collision between said Buick and said Isaacs' car and Isaacs' death resulted as a direct result of the injuries then received by said R. W. Isaacs."

Appellant insists that the right to recover on this ground of negligence was waived by appellees in their motion for an instructed verdict, in that, this ground was not urged therein as one upon which the right to the instructed verdict was based, and further because a special issue thereon was not submitted by the court nor requested by appellees to be submitted. Appellees formally set out in said motion for an instructed verdict, under separate allegations, each and every ground of negligence alleged by them, and although insisting especially that they were entitled to an; instructed verdict as to liability on the ground of negligence, alleging, in effect, that appellant was a dealer in automobiles, and as such had accepted the benefits of article 6686, R. S. 1925, as amended by the 40th Legislature, p. 296, c. 211, Acts of 1927 (Vernon's·Ann. Civ. St. art. 6686), and as such dealer had knowingly intrusted said automobile to Simpson for operation on the public streets, displaying such dealer's license plate, and thereby, as a matter of law, Simpson was their agent and was operating such automobile for their use and benefit, whereby appellant became, and was, responsible for the alleged negligent acts of said Simpson causing the death of said Isaacs, and was es-

topped from denying the agency· of the. said Simpson, his employment, and that he was acting within the scope of his employment at the time he committed the alleged negligent act which resulted in the death of said Isaacs. Following said grounds, they closed with this provision: "In making this motion the plaintiffs do so without waiving any of the other of the grounds alleged by it as a basis of liability in the event the court should fail to sustain the foregoing grounds or any of them, but insists that since they have shown liability as a matter of law that the court should only submit the issue to the jury as to the. measure of damages."

Therefore, in so far as shown by said motion, appellees did not waive therein the submission of an· issue on any of·· the other grounds of negligence alleged by them as a basis of appellant's liability. Appellant urges that the court having failed to submit, and appellees not having requested the court to submit, an issue calling for a finding upon the ground of negligence, viz., that appellant knowingly intrusted the automobile to said Simpson, an unfit and incompetent person to have and use, or to drive and control, over and along the public streets of the city of Dallas, and who was in the habit of becoming under the influence of intoxicating liquor, and was so intoxicated, etc., the submission of said issue was waived. That it was, as a prima facie proposition, the duty of the court to have submitted this issue, we think must be conceded under the following testimony:

Alfred Isaacs, son of appellee, Mrs. Mettie Isaacs and the deceased, R. W. Isaacs, testified as follows: "I remember the occasion of the collision between a Buick sedan and my father's car at the intersection of Knight and Brown streets in September, 1928; I was driving father's car at the time, a Studebaker Phæton. I first saw the other car just before it hit us; at that time my car had just barely nosed out into the intersection, had gotten through the intersection, that is the front of my car was barely in the intersection of the street there. The other car came from Maple Street or Maple Avenue. I·don't know how fast it was going, but it was going so fast that I just got a glimpse of it and it hit us. It was roaring awfully loud. I' believe it was the left hand side, the front left hand side of the Buick that hit our car and it practically completely demolished the front of the automobile and knocked the motor block clear up out of the hangers and cracked it. It hit right on the right front wheel and spun the car around, I don't know how many times and when it stopped, we were facing west on Knight Street. There was a big crowd of people around there and I asked someone who was driving the car and they pointed out someone, Mr. Simpson. I asked if he was driving the car. Simpson had liquor on his breath. When I saw him, he was

drunk, he was not staggering, it was so crowded around there that he couldn't stagger, but from all outward appearances he was drunk."

J. M. Worsham testified as follows: "During 1928, I was with the Worsham-Buick Company as dealer and was president of the company. The business of the Worsham-Buick Company was as dealers in this territory. I knew Mr. Al Simpson; he worked for me for many years. During September 1928 he was Service Manager and I think he had been for probably about three years."

W. P. Slaughter, a witness for appellees, testified as follows: "I have lived in Dallas about three years, I was on the police department in 1928; I remember the automobile accident in question, reached the place of the accident soon after it occurred at Knight and Brown streets."

As to appellant's car driven by Simpson, the witness testified: "There was a man standing to the left of the street right there at Knight and Brown street, standing straight up and another man holding him. The man that was being held gave his name as Al Simpson and I took charge of him because he was drunk. I have had experience with drunk men and I tell the jury that this man was drunk. We put him in jail and filed on him for driving while intoxicated."

Charles K. Cohn, a witness for appellant, testified: "I was connected with Worsham-Buick Company in September 1928 in the capacity of Sales Manager. I knew a man by the name of Al Simpson in September 1928, he was working for Worsham-Buick Company as service superintendent."

This witness further testified that on the 8th day of September, 1928, said Simpson applied to him (witness) for and obtained permission to use, on the following Sunday, for his (Simpson's) own personal pleasure, the car in question, which was a new car owned by appellant which Simpson was driving at the time of the collision that resulted in the death of R. W. Isaacs.

E. C. Beaton, a witness for appellees, testified: "In 1928, I lived at the corner of Knight and Brown streets, I remember an accident that occurred between a Studebaker and a Buick automobile, it was on Sunday. I heard the car coming and went to the door just as it struck. It was the Buick car I heard coming; it came from towards Maple Avenue. Its fast speed was the cause of my starting to the door, I heard the car hit the interurban track and I thought it turned over from the way it sounded and by the time I got to the door he struck the Studebaker in front of the house; the Studebaker was practically still at the time he hit it. I should judge he (the driver of the Buick) was going somewhere around eighty miles an hour. I went right on out and picked the gentleman up off the street and helped the

fellow out of the automobile that turned over, the Buick. I don't remember his name, but I would know the man if I were to see him. I know a drunk man when I see him and this man was what I would call a drunk man. I stayed there with the man until the officers came and got him, I turned him to the officer."

W. D. Prather, a witness for appellees, testified in part as follows: "I have worked for the Worsham-Buick Company and am acquainted with J. M. Worsham, I worked there something like seven or eight months, I worked there the same time Al Simpson did in the sales department with him, during the time I worked there Mr. Worsham was in and out of the service department. I don't remember the date of the accident that Al Simpson had on Knight and Brown street but I remember reading about it in the paper. I know that I worked there after that. I know that Al Simpson drank liquor there all the time about the place. On one occasion while I was working there, Al took one of the customer's cars out while drunk and had a wreck and brought it in the shop and fixed it up and I went to Mr. J. M. Worsham and told him of the occurrence, about Al getting drunk and tearing up the car and told Mr. Worsham that if he didn't fire him or make him quit using cars that he was going to kill somebody. Mr. Worsham replied that he knew that Al was drinking all the time, but he was too good a man and making too much money and he couldn't afford to fire him. Mr. Worsham did not fire him. To my knowledge, he worked after that four or five weeks. I quit working there before this present accident occurred."

H. E. Smith, a witness for appellant, testified as follows: "I have seen Al take a drink of intoxicating liquors, but not at the place of business; I never saw him at the place of business when his appearance indicated to me that he was drinking."

E. H. Ivey, a witness for appellees, testified: "I have been in Dallas since 1919. I am a mechanic and work for the Bradshaw Motor Company. I worked for the Worsham-Buick Company in 1923 and a part of 1924 and part of 1928. During that time Al Simpson worked there part of the time as shop foreman and as Service Manager. I worked under him and in his department both times I was there. I have seen Al Simpson drinking over at the shop and have seen him under the influence of liquor. I have seen Simpson with intoxicating liquor there at the place of business while he was there. I have seen Al Simpson with liquor in his locker room. Al drank promiscuously and pretty heavy, he was shop foreman when I went to work there, I knew that he was fired in October, 1928, but he came back here just before I came here from Los Angeles. Regardless of when it was, I would say that Al

292

Simpson drank over there regularly on the job."

. Appellant complains of the judgment; appellees insist that same should be sustained. The effect of this situation must be determined by the provisions of article 2190, R. C. S. 1925, as amended by the 42d Legislature, c. 78, p. 120, Acts of 1931 (Vernon's Ann. Civ. St. art. 2190). The first provision of this act requires that all the issues made by the pleadings and evidence shall be submitted by the court; the second provision limits the effect of the first provision, in that, a party complaining of the judgment cannot urge the failure to submit an issue as ground for reversal of the judgment, unless the submission of the issue so involved was by such party requested in writing; by the third provision, an issue not submitted and not requested to be submitted is to be regarded and acted upon as found by the trial court in such manner as to support the judgment rendered, if there should be evidence to sustain such finding; and the fourth provision confers upon a party requesting the submission of an issue to urge, for the first time after verdict, that the evidence was insufficient to warrant the submission of same.

■ What is the converse of the effect of the second provision of article 2190, supra, we think is important to be considered as bearing in an appreciable measure, upon the effect that should be given to said provision, as applicable to the attitude occupied by the parties litigant to this appeal. Such converse effect, we think, is that failure to submit an issue which, if submitted and found in favor of the prevailing party, would have sustained the judgment rendered by the trial court, should be deemed a ground only for the reversal and remanding of a cause, although the submission of the omitted issue was not requested in writing by the prevailing party; he not complaining of the judgment. This would prevent the application of the doctrine of election predicated upon the selection by a plaintiff, of the theory upon which his cause was submitted to a jury, as he would in effect occupy the position of a party who had requested the submission of an issue in writing, urging for the first time after verdict, that the evidence was insufficient to warrant its submission. This, we think, but a just and reasonable rule of procedure whereby the philosophy of the law of judicial determination is regarded and not merely the shadow thereof, viz.: To obtain a fair, comprehensive, and impartial legal trial whereby the rights of the parties shall be fully and orderly ascertained and enforced. The theory upon which the trial court (whether based upon any one or all of the five grounds of negligence alleged) held, as a matter of law that, under the evidence introduced, appellant was liable on account of and for the negligent acts alleged, and established by evidence, to have been committed by Al Simpson, would not, and did not, support such conclusion.

■ The fact that appellees erroneously selected the wrong theory upon which to submit their case to the jury—upon which they were not entitled to recover—and pursued such theory until it was adjudged by the appellate courts that a recovery could not be sustained thereon, as such right never existed under such theory, should not deny to appellees a trial upon that theory of their case presenting a meritorious cause of action, which, if established, would secure to them the relief to which they are or may be entitled; appellant not having suffered any loss or injury, nor appellees benefited by the trial and submission of the cause on such wrong theory. To this effect, on principle, is the holding in the following cases: St. Louis S. W. R. Co. of Tex. v. Seabold (Tex. Civ. App.) 277 S. W. 229; Dallas Hotel Co. v. Davidson (Tex. Com. App.) 23 S.W.(2d) 708; Federal Surety Co. v. Smith (Tex. Com. App.) 41 S.W.(2d) 210; International G. N. R. Co. v. Casey (Tex. Com. App.) 46 S.W.(2d) 669; State v. Texas Mut. Life Ins. Co. of Texas et al. (Tex. Civ. App.) 51 S.W.(2d) 405; Dallas Ry. & Ter. Co. v. Fuchs (Tex. Civ. App.) 52 S.W.(2d) 685.

As to appellant's second proposition, we do not think that special issues Nos. 1 and 2 are subject to the criticism presented thereby, based on the failure of special issue No. 1 to affirmatively instruct the jury not to consider the elements of grief, mental pain, anguish, and loss of society suffered by Mrs. Mettie K. Isaacs as the result of the death of R. W. Isaacs, and to consider only pecuniary loss, if any, of the said Mettie K. Isaacs, and as to special issue No. 2, because same failed to contain similar instructions as to appellee Alfred Isaacs.

We think that the above attack upon the court's charge will be amply answered by quoting its material provisions, viz.:

"This case is submitted to you upon the following special issues, which you will answer from the preponderance of the evidence, that is, the greater weight and degree of credible testimony before you without regard to the effect your answers may have upon the judgment in this case.

"Special issue No. 1: What sum of money do you find and believe from the preponderance of the evidence, if paid now in cash, would reasonably compensate the plaintiff, Mrs. Mettie K. Isaacs for the present value of the pecuniary aid, if any, she would have received from the said R. W. Isaacs had he not been killed, and for the reasonable and necessary doctors and nurses bills, if any?

"Special Issue No. 2: What sum of money do you find and believe from a preponderance of the evidence, if paid now in cash, would reasonably compensate the plaintiff Alfred Isaacs for the present value of the pe-

cuniary aid, if any, he would have received from the said R. W. Isaacs, from the time of the accident in question until June 25, 1929, had he not been killed?

"You are further instructed that while deliberating upon your verdict you will not mention, refer to or take into consideration, by mental reservation or otherwise, any matter, fact or circumstance, other than the testimony that has been produced upon the witness stand and the law as given you in the charge by the court, all of which I instruct you, you must strictly observe and obey."

We are of the opinion that we can safely assume that the personnel of the jury possessed sufficient mental capacity to readily understand the plain, everyday, commonly accepted meaning of the above language, and were guided in their deliberation upon their answers to the special issues submitted by the plain positive terms of said charge, and that thereby every protection that would have been vouchsafed to appellant, if said issues had been submitted in the manner and form desired by it, were secured to appellant under the given instructions. Said assignments are therefore overruled.

Therefore, appellees' motion for rehearing is granted, the judgment heretofore entered reversing and rendering this cause in favor of appellant is set aside, and judgment now rendered reversing and remanding this cause to the trial court for further proceedings.

Motion granted; cause reversed and remanded.

### On Further Rehearing.

LOONEY, J.

The motions for rehearing, now under discussion, were disposed of by the court before Judge VAUGHAN, late Associate Justice (who had charge of the record), retired from the bench, and the task of stating, for the court, reasons why the motions were overruled was given the writer. A short résumé of the case at this juncture is deemed appropriate.

The action is one for damages by Mrs. Isaacs for herself and on behalf of her son, Alfred (a minor at the time of his father's death), and her married daughter, Mrs. Tribble, for injuries resulting in the death of R. W. Isaacs, husband and father of appellees, caused by the alleged negligence of appellant. Mr. Isaacs died as the result of injuries received when the automobile in which he was riding, was struck and demolished by an automobile belonging to appellant, driven by one Al Simpson, appellant's service superintendent. The evidence is to the effect that Charles K. Cohn, appellant's sales manager, having control of its new cars in stock, permitted Simpson to take one out on a Sunday for personal use, who while intoxicated operated the car recklessly and negligently, colliding with the car in which Isaacs was seated, inflicting upon him injuries from which he died. The grounds of negligence alleged are, in substance: (a) That Simpson was at the time appellant's agent, acting within the scope of his employment, therefore liability was established under the doctrine of respondeat superior (this ground was not sustained by evidence, hence will not be considered further); (b) that as a question of law, appellant was chargeable with Simpson's negligence, because permitted to use and operate the automobile in violation of article 6686, R. S. 1925, as amended, in that, being under a dealer's license and number plate issued to appellant, was not operated for demonstration purposes (this ground was sustained by evidence, but the answer of the Supreme Court to certified questions removed it as a ground of recovery, as shown hereafter); (c) also, that appellant was guilty of actionable negligence, in that Simpson, an unfit, incompetent, reckless driver, addicted to the habitual use of intoxicating liquors, was permitted by appellant's vice principals, with knowledge or notice of Simpson's unfitness, incompetency, recklessness, and dissipation, to use and operate the car upon the crowded highways of the city of Dallas.

The issues last mentioned, while not established by uncontroverted evidence, were sufficiently supported to raise jury questions, to the effect that, with knowledge or notice of the facts above mentioned, Cohn, acting within the scope of his authority, was guilty of actionable negligence, binding upon appellant, in permitting Simpson to use and operate the automobile at the time and under the circumstances; that Worsham, president and general manager, was guilty of actionable negligence, binding upon appellant, in failing, after knowledge of the facts above mentioned, to take the necessary steps to prevent Simpson from obtaining the automobile for personal use upon public highways.

At the conclusion of the evidence, the court took the question of liability from the jury on the idea that, under the pleadings and uncontroverted facts, plaintiffs were entitled to recover their damages, to be determined by the jury, and only submitted that one question, that is, the assessment of damages, and on their findings, rendered judgment against appellant, from which the appeal was prosecuted.

On original submission, for the reasons stated by Judge VAUGHAN in the opinion delivered October 22, 1932, we certified to the Supreme Court, for its adjudication, the question, which at that time was thought to be decisive of the controversy, that is, the question whether or not Simpson's use and operation of the automobile upon the highways of the city of Dallas in violation of article 6686, R. S. 1925, as amended, by permission of appellant, would fix its liability as a matter of law. Answering the question, the Supreme Court announced the law to be that,

under the facts, no liability existed (see report of case on certificate, 51 S.W.(2d) 277); therefore, in harmony with the law as announced by the Supreme Court, we reversed the judgment of the trial court and rendered judgment for appellant (see opinion by Judge VAUGHAN, delivered September 10, 1932). Later, this judgment was set aside, on motion for rehearing by appellees, and after further consideration, for reasons stated in the opinion by Judge VAUGHAN, delivered October 22, 1932, the case was reversed and remanded for further proceedings.

This brings us to the motions for rehearing, under consideration. Appellees contend that, instead of remanding the cause, the court erred in not affirming the judgment in their favor, because: (a) Appellant having urged only one ground for reversal, that is, that the court erred in not instructing a verdict in its favor, and as this contention was denied, this court should have affirmed the judgment. Appellees are in error, appellant also assigned error and properly briefed the contention that the court erred in its charge on the measure of damages, in that, the jury was not instructed that, in making the assessment, nothing could be allowed plaintiffs for grief, mental anguish, or loss of society.

■ The court's charge reads: "What sum of money do you find and believe, from the preponderance of the evidence, if paid now in cash, would reasonably compensate the plaintiff, Mrs. Mettie K. Isaacs, for the present value of the pecuniary aid, if any, she would have received from the said R. W. Isaacs had he not been killed, and for the reasonable and necessary doctors and medical bills, if any." A similar submission, in so far as applicable, was made as to Alfred Isaacs, the son of deceased. Appellant urged exceptions to this charge, on the ground that the jury was not told that in assessing damages they could not consider the elements of grief, mental pain and anguish, or loss of society. Error was also assigned and the matter is properly before us for consideration.

At a former day, we overruled appellant's contention in this respect (see opinion by Judge VAUGHAN filed October 22, 1932), but on reconsideration, have concluded that such holding was error. In Gulf, C. & S. F. R. Co. v. Conley, 113 Tex. 472, 475, 260 S. W. 561, 32 A. L. R. 1183, the Supreme Court held that articles 1971 and 1985 (now 2185 and 2190) were designed to accomplish the same purpose, and should be construed together, to the effect that the failure to submit a particular issue can be reviewed only when a special charge thereon is tendered and refused, but that such is not the case with reference to a defective, erroneous, or incomplete statement of the law or issue; that in the latter instances, the objection mentioned in the statute (now article 2185) takes the place of and is tantamount to the tender of a special issue and renders such offending charge open to review.

After the charge was objected to, we think the court erred in giving same without correction. Charges, couched in general language such as was employed by the court in the instant case, were held erroneous (presenting reversible error) in International & G. N. R. Co. v. McVey, 99 Tex. 28, 87 S. W. 328; Gulf, C. & S. F. R. Co. v. Farmer, 102 Tex. 235, 115 S. W. 260; Hines v. Kelley (Tex. Com. App.) 252 S. W. 1033.

■ Because of the error just considered, the case will have to be reversed and remanded, unless appellant shows reasons why judgment should be rendered in its favor, and basis for such relief must be found to exist, if at all, in its assignments of error. Appellant reduces its assignments (forty-two in number) to two propositions: One, that the court erred in submitting the measure of damages. This matter we have just considered. The other is that the court erred in not instructing a verdict in its favor because the evidence showed that, at the time of the accident, the automobile was being driven by Al Simpson while off duty and solely for his own pleasure. If this statement comprehends all the evidence on the question of liability, the position of appellant would be well taken, but such, in our opinion, is not the case. On the question of appellant's negligence whether or not (through its vice principals, Worsham and Cohn) in not preventing, or by permitting, Simpson to use the car for the purpose and under the circumstances mentioned, the evidence, although conflicting, was, in our opinion, sufficient to raise jury issues.

Several of Simpson's fellow employees testified that he drank intoxicating liquors on certain occasions, two gave testimony to the effect, that he kept liquor in a locker at his place of work, drank there and would get under its influence. One of these, Mr. Prather, testified that, prior to the accident, he told Mr. Worsham, general manager, that Simpson had taken out a customer's car and while drunk wrecked it, and warned Worsham that, if he did not discharge Simpson, or prevent him from using cars, he would kill some one; that to this warning Worsham replied that he knew Simpson drank liquor, but he could not be discharged because he was a valuable man and made money for the company.

There is no direct evidence that Cohn knew of Simpson's habits of dissipation, nor that Worsham was apprised of these facts other than as stated above; yet, they associated with Simpson at appellant's place of business, and neither Cohn nor Worsham, while on the stand, disavowed such knowledge; Cohn simply said that, when he consented to

the use of the car, he did not smell liquor, or notice anything about Simpson indicating that he was drinking; Worsham's testimony on the issue was confined alone to a denial of the facts testified to by the witness Prather, above stated. These facts and circumstances, in our opinion, would warrant jury findings that both Cohn and Worsham knew of Simpson's habits of dissipation; at all events, we think these jury questions were raised, that is, whether or not Worsham, under the circumstances, negligently failed to take necessary steps to prevent Simpson from obtaining appellant's car for personal use upon the public highways; also whether or not Cohn, under the circumstances, was negligent in permitting Simpson to take out and use the car on the occasion. If either Worsham in not preventing, or Cohn in permitting, Simpson to obtain and use the car, was guilty of actionable negligence, appellant would, in our opinion, be liable. Neither the question of agency, nor whether at the time Simpson was acting within the scope of his employment, is involved, but the question is: Did appellant owe any duty to individuals who might be upon or traveling over highways, to exercise reasonable care to see to it that those to whom it intrusted its cars for use upon the public highways, are competent sober drivers? We think appellant did owe such duty, and if, through its failure to discharge same, Simpson was permitted to obtain its car, and becoming drunk, by reckless, abandoned driving collided with the car in which Isaacs was riding, killing him, appellant would be liable. As these issues were supported by evidence, the court did not err in refusing to direct a verdict for appellant.

The facts of the case, we think, bring it within the doctrine announced in the well-considered case of Waldo v. Galveston, etc., Ry. Co., 50 S.W.(2d) 274, with full citation of authorities, by Judge Leddy for the Commission of Appeals, the holdings of the latter, on the questions discussed, were expressly approved by the Supreme Court.

In harmony with these views, the motions for rehearing are overruled.

Overruled.