**Edward P. CALHOUN et ux.**

v.

**Homer A. (Bud) HILL.**

**No. 5494.**

Court of Civil Appeals of Texas, Eastland.

Nov. 6, 1980.

Rehearing Denied Dec. 4, 1980.

Tim Hoffman, Smith, Jarrell and Associates, Amarillo, for appellants.

R. A. Wilson, Underwood, Wilson, Sutton, Berry, Stein & Johnson, Amarillo, for appellee.

RALEIGH BROWN, Justice.

This is a negligence case in which Edward P. Calhoun and wife seek to recover damages from Homer A. (Bud) Hill for the death of their son, Robert Calhoun, who was killed by a hydraulic gate closing on him. The trial court determined that Hill was exempt from the provisions of the worker's compensation act, and no challenge is made to such determination. After the jury resolved special issues in favor of the Calhouns, the trial court sustained Hill's motion for judgment non obstante veredicto. Mr. and Mrs. Calhoun appeal. We affirm.

In the afternoon of January 6, 1976, Robert Calhoun, Wesley "Skeet" Johnson and Ted Hankins were working as employees of Hill. Those three, Vern Owen, and Wanda Owen were building troughs in the processing shed at the Hill feed lot where a dipping chute or vat was located. They needed more lumber, and Vern and Wanda left to get some. While waiting for the lumber, Johnson and Calhoun decided to test their speed afoot with a contest. Johnson was to run from a predetermined place to the control which activated a hydraulic gate on the dipping vat. Calhoun was to run an equal distance through the dipping vat before the hydraulic gate could be shut. Hankins, who was the yard foreman or supervisor, acted as starter for the race. Johnson reached the control level at about the same time Calhoun reached the gate. Johnson activated the gate which shut on Calhoun's head and neck causing his death.

Johnson testified in part:

Q But, anyhow, very definitely you and Robert came to the understanding in words that you would have this race?

A Yes.

Q You talked about it, did you?

A Yes.

Q And you agreed between the two of you that you would have the race?

A Yes.

Q At what point did you ask Ted to act as starter?

A Well, after we decided to run the race, well, Ted was there and we asked him to start.

Q This was something–this was something that you asked Ted just at the time you started the race?

A Well, we asked him if he would start it or whatever and he said, yes.

Q Running that race wasn't any part of your job, was it?

A No, sir.

Q Running that race was just a matter of goofing off while you were waiting for Vern to come back with the lumber wasn't it?

A We were passing the time away, yes, sir.

Q But your job was not to run that race but to build the troughs, wasn't it?

A Yes.

The jury found (1) in response to issue 1a and 1b that Johnson and Hankins were in the course of their employment for Hill at the time of the occurrence; (2) that Johnson activated the hydraulic gate at a time when a person using ordinary care would not have activated it and this was a proximate cause of the occurrence; (3) that Hankins was present and aware that Calhoun and Johnson were about to engage in the fatal activity, was in a position to prevent them from doing so, and that his failure to issue specific instructions forbidding the activity was negligence and proximate cause; (4) that Hankins was Hills' vice–principal; and, (5) that damages of $30,000.00 should be assessed.

The Calhouns urge only three points of error that the trial court erred in granting judgment non obstante veredicto for Hill because (1) and (2) there was evi-dence to support the jury's answers to Special Issues 1a and 1b and (3) there was evidence to support the jury's answers to the remaining special issues. In passing on such points, this court must follow the rule stated in *Leyva v. Pacheco*, 163 Tex. 638, 358 S.W.2d 547 (1962):

> To sustain the action of the trial court in granting the motion for judgment notwithstanding the verdict it must be determined that there is no evidence on which the jury could have made the findings relied upon. In acting upon such motion all testimony must be considered in a light most favorable to the party against whom the motion is sought and every reasonable intendment deducible from the evidence is to be indulged in such party's favor. *Burt v. Lochausen*, 151 Tex. 289, 249 S.W.2d 194.

Considering the evidence in such light, we agree with the conclusion of the trial court that the acts of Johnson and Calhoun which resulted in the death of Calhoun were not acts in the prosecution or furtherance of Hill's business. As stated by the court in *Galveston, H. & S. A. Ry. Co. v. Currie*, 100 Tex. 136, 96 S.W. 1073 (1906):

> The case is controlled, in our opinion, by the proposition, in which all authority agrees that when the servant turns aside, for however short a time, from the prosecution of the master's work to engage in an affair wholly his own, he ceases to act for the master, and the responsibility for that which he does in pursuing his own business or pleasure is upon him alone.

> *       *       *       *       *       *

> When he goes entirely aside from his work, and engages in the doing of an act not in furtherance of the master's business, but to accomplish some purpose of his own, there is no principle which charges the master with responsibility for such actions . . . .

See also *Texas & P. Ry. Co. v. Hagenloh*, 151 Tex. 191, 247 S.W.2d 236 (1952); *Chatwell v. Baker Oil Tools, Inc.*, 344 S.W.2d 700

(Tex.Civ.App.–Houston 1961, no writ); *Williams v. Roney*, 275 S.W.2d 537 (Tex.Civ. App.–Waco 1955, writ ref'd n.r.e.); *Hein v. Harris County*, 557 S.W.2d 366 (Tex.Civ. App.–Houston [1st Dist.] 1977, writ ref'd n.r.e.).

The court in *Southwest Dairy Products Co. v. De Frates*, 132 Tex. 556, 125 S.W.2d 282 (Comm'n App. 1939, opinion adopted) said:

It is the firmly settled rule that when a servant completely departs from his work to accomplish some purpose of his own not connected with his employment, the relation of master and servant is thereby temporarily suspended and the master is not liable for his acts during the period of such suspension.

In 2 Restatement of Agency § 235 (1957) it is stated:

An act of a servant is not within the scope of employment if it is done with no intention to perform it as a part of or incident to a service on account of which he is employed.

■ We hold as a matter of law that the determination by Calhoun and Johnson as to who was the speediest afoot and Hankins' action as starter was for their own purposes which, in no way, furthered the interests of Hill. Therefore, they were not in the course of their employment for Hill at the time of the occurrence. Such holding would defeat the Calhouns' right of recovery against Hill unless the findings that Hankins was Hill's vice–principal permits a recovery by the Calhouns, in view of the jury's findings that the vice–principal was aware that Calhoun and Johnson were about to engage in a fatal activity, was in a position to prevent them from doing so and failed to issue specific instructions forbidding the activity and such was negligence and the proximate cause of Calhoun's death. We hold these issues to be immaterial.

The court in *Abalos v. Oil Development Company of Texas*, 544 S.W.2d 627 (Tex. 1976) said:

As this court said in *Coleman v. Hudson Gas and Oil Corporation*, 455 S.W.2d 701 (Tex.1970), any plaintiff must prove the existence and violation of a legal duty owed to him by the defendant to establish tort liability.

The issue then is whether the law, as applied to this record, imposes upon Hankins the duty of forbidding the personal activity which brought about Calhoun's death. We hold it does not.

We have found no Texas cases, nor have we been cited any, that place upon an employer a duty to oversee or restrain their employees in personal activities which constitute no part of doing their job.

The Calhouns cite *Waldo v. Galveston, H. & S. A. Ry. Co.*, 50 S.W.2d 274 (Tex. Comm'n App. 1932, holding approved), as being supportive of their contention that since Hankins was found to be a vice–principal, was present and aware of what was about to take place, (and) failed to forbid such activity and such failure was negligence and the proximate cause of the death, they were entitled to recover against Hill. We do not agree that *Waldo* is supportive of the Calhouns' theory.

In *Waldo*, the court said:

All of the authorities agree that, when a servant turns aside from the prosecution of the master's work to engage in an affair of his own, he ceases for the time to act for the master, and becomes liable for his act in pursuing his own business or pleasure. *Galveston H. & S. A. Railway Co. v. Currie*, 100 Tex. 136, 96 S.W. 1073, 10 L.R.A.(N.S.) 367.

Nor is the master required to assume that his employees, during the hours of their labor, will engage in sportive pastimes dangerous to other employees so as to place upon him the duty of promulgating rules to prevent the same. But we are not concerned here with an isolated instance of an employee turning aside from his employment to engage in shooting wire clips. Had plaintiff in error

been injured as the result of such an act, there could be no question that his employer could not be held responsible therefor. We are dealing here with an altogether different situation. It is made to appear from the evidence adduced by plaintiff in error that the shooting of these clips had become a custom and practice among certain of defendant in error's employees. That such practice was fraught with danger to other employees is attested by the fact that, prior to plaintiff in error's injury, another employee, while in the active discharge of his duties, had been severely injured as a result of this habit. The representative of the company occupying the position of vice–principal was informed of such practice and of the fact that it had already resulted in a painful injury to one of the employees. The company's representative in charge of and supervising the work of these employees had full power and authority to control their actions during the hours of their labor. According to plaintiff in error's view, he failed to take any action to stop this practice, although he promised to do so upon two occasions. As a result of such failure, plaintiff in error suffered a grievous injury. Under the facts and circumstances above recited, we have no hesitation in deciding that the railway company owed to plaintiff in error and other employees the duty to exercise reasonable diligence to prevent the continuance of a practice reasonably calculated to injure employees while actively engaged in the discharge of their duties. Such rule places no undue burden upon the master, and gives to the employee a protection to which he is fairly and justly entitled.

Subsequently, in *Worsham–Buick Co. v. Isaacs*, 126 Tex. 546, 87 S.W.2d 252 (Com. App.1935, opinion adopted), the dealer's service superintendent was involved in a collision while driving one of the dealer's automobiles. He had taken the automobile with permission of the dealer's sales manager, but there was no evidence that the sales manager had authority to loan an automobile for use not connected with dealer's business. The court said about *Waldo*:

With reference to the question of the negligence of Worsham, the president and general manager, in failing to take steps to prevent Simpson from obtaining the automobile, we hold that, under the facts, no duty rested upon him to do so. This case does not fall within the principles announced in *Waldo v. Galveston, etc., R. Co.* (Tex.Com.App.) 50 S.W.2d 274. There the railway company had knowledge of a dangerous custom and practice which had grown up among its employees of shooting wire paper clips with rubber bands, and failed to take steps to put a stop to that practice. Knowledge by the railway company of the dangerous practice gave rise to a duty to warn.

We hold under the facts of the case at bar that Hankins had no duty to forbid one instance of a purely personal activity of two employees and, therefore, no liability is imposed on Hill.

Moreover, we note that in *McCorstin v. Mayfield*, 274 S.W.2d 874 (Tex.Civ.App.– Fort Worth 1955, writ dism'd by agr.), the court said:

The effect of the rule of law making an employee his employer's vice–principal operates to make the master liable to his servant (under the vice–principal) for injuries resultant from the vice–principal's negligence ... so long as his acts (or omissions) bear a relation to the employer's business.

Here the vice–principal's action bore no relationship to the employer's business.

We have considered and overrule all points of error. The judgment is affirmed.