**Glenda MACKEY, Appellant,**

v.

**U.P. ENTERPRISES, INC., d/b/a
Taco Bell, Appellee.**

No. 12–94–00011–CV.

Court of Appeals of Texas,
Tyler.

Oct. 30, 1996.

Bob Whitehurst, Tyler, for appellant.

John F. Bufe, Deborah O. Evans, Tyler, for appellee.

Before RAMEY, C.J., and HOLCOMB and HADDEN, JJ.

HADDEN, Justice.

This is an appeal of a summary judgment granted in favor of U.P. Enterprises, Inc., d/b/a Taco Bell ("UPE"). Glenda Mackey ("Mackey") sued her employer, UPE, two of its managers, Ron Smith and Greg Johnson ("Smith" and "Johnson"), and Taco Bell Corporation ("TBC"), the franchisor, alleging eight separate causes of action. Mackey's underlying allegations were that she was sexually harassed by Smith and Johnson. The trial court granted UPE's motion for summary judgment on all causes of action and severed Mackey's causes of action against UPE from the remainder of the case. Mackey appeals the decision of the trial court, raising ten points of error. We will affirm in part and reverse and remand in part.

UPE's motion for summary judgment was supported by the affidavit and deposition of Richard Upshaw ("Upshaw"), vice-president and Director of Operations of UPE, the deposition of Mackey, and the depositions of two other employees, Roxie Hall ("Hall") and Jessica Jones ("Jones"). From this evidence, it appears that UPE, a franchisee of TBC, owns and operates several Taco Bell restaurants in Tyler, Smith County, Texas. In November 1990, UPE employed Mackey as an hourly wage employee in one of its restaurants where she was under the supervision of Smith. She was later transferred to a second restaurant where she was under the supervision of Johnson. Mackey was terminated in August 1991. UPE denies that any sexual harassment towards Mackey took place, but that if it did, it was totally unauthorized, unexpected, and unforeseen by UPE. Furthermore, UPE claims that Mackey's injuries, if any, were sustained in the course of her employment and were, therefore, barred by the exclusive remedy provisions of the Texas Worker's Compensation Act ("the Act").[1] UPE's summary judgment proof also shows that during her employment with UPE, Mackey received several written reprimands for failure to report to work as scheduled and for rudeness to customers. UPE claims that it was for these reasons that her employment was terminated.

Mackey's summary judgment proof shows that she was sexually harassed by Smith and Johnson while they were employed by UPE, and that she was allegedly terminated from her employment because she would not give in to their sexual demands. Mackey claims that the Texas Worker's Compensation Act was not applicable to her because the sexual assaults by Smith and Johnson were personal to her and that her injuries were not received in the course of her employment.[2] The summary judgment proof includes the following affidavit by Mackey:

> . . .
>
> Greg Johnson and Ron Smith made their work policies clear to me, after approximately one month of employment. First, Ron Smith, and then, later, Greg Johnson asked me to have sexual intercourse and perform sexual favors for them. Frequently, Ron Smith and Greg Johnson used slang terms such as "let me touch you up". When I refused them, my scheduled hours were systematically reduced. Their

1. Act of December 13, 1989, 71st Leg., 2nd C.S., Ch. 1, § 4.01, 1989 Tex. Sess. Law Serv. 32, *repealed by* Act of May 22, 1993, 73rd Leg., Ch. 269, § 5(2), 1993 Tex. Sess. Law Serv. 1275 (current version at TEX. LABOR CODE ANN. § 408.001 (Vernon Supp.1996)).

2. UPE was a subscriber under the Texas Worker's Compensation Act during Mackey's employment. However, Mackey did not file a claim nor seek benefits under the Act.

requests for sexual favors happened with regularity. At one point I was informed by Ron Smith that, "if I did it, I'd get more hours."

I felt pressured to give in to their demands for sexual favors in order to keep working at Taco Bell. At the time of my employment, I did not have a reliable form of transportation. One afternoon around mid-February of 1991, when I was working at the Gentry store, Ron Smith offered to give I(sic) a ride home if I would pay him $2.00. I thanked him and explained that I would pay Ron Smith once I got home because my money was at home. I got into the car and Ron Smith started for my home across town. After a few minutes Ron Smith said that he did not want the money but instead wanted sex. I said no, that I would rather pay. For the next several minutes Ron Smith and I argued about the method of payment. I would not give in. Furious, Ron Smith pulled over to the side of a very busy road and ordered me from the car. Ron Smith then told me that if I would not have sex with him, I could walk. Although it was several miles, I walked home.

After that incident Ron Smith would brush up against me "accidentally". Ron Smith also started calling me such names as "fat droopy titty", "sticky", "slouchy", and "sorry" in front of other workers at TACO BELL.

Near the first of March 1993, Ron Smith touched my breast and asked me if I was sure I wanted to be transferred to another store. My response was "yes".

My transfer to TACO BELL store on Troop (sic) Highway was intended as a punishment or the result of a bet between Ron Smith and Greg Johnson, that is that Greg bet Ron that he could have sexual intercourse with me. Once at the Troop (sic) store, the harassment continued with even more frequency.

In April of 1991, I caught Greg Johnson and employee Jessica Jones engaging in oral sex. I was then called into the office by Greg Johnson and he told me not to tell anyone or he would "fire my ass if talked".

From April of 1991 to August of 1991, the following incidences occurred [sic]:

(1) Greg Johnson would remark to me that he wanted to "touch it up"

(2) Greg Johnson would "accidentally" brush up against me touching my breasts and buttocks.

(3) Greg Johnson called me "shithead", "stupid ass", and "fat ass" in front of some of the workers of Taco Bell.

At one point Greg Johnson arranged for me to be alone with him in the store. At this time Greg Johnson demanded sex. When I denied Greg Johnson, I received a written reprimand. It was obvious the more I denied Greg Johnson, the more I was penalized. In addition to the above, Greg Johnson would belittle me in front of co-workers and customers by criticizing my work and by calling me names.

Regardless if a female worker complied or not Greg Johnson would verbally and physically harass all the females at work. Greg Johnson would ask personal questions about my home life and my sex life. Greg Johnson would come up to me and touch me on the breasts or fondle my buttocks. Greg Johnson would ask me what I thought of other women's physical attributes. I had all of these incidents happen to me from April of 1991 to August of 1991.

In July/August of 1991 I made arrangements for Greg Johnson to pick me up at home for a ride to work, because I had no adequate means of transportation. Payment was never discussed and I believed that Defendant had given other employees rides before. When Greg Johnson, in this TACO BELL uniform, came to my door I let him in. I was dressed in my TACO BELL uniform and ready to go to work. Greg Johnson informed me that we were going to have sex. I told him no. His response was "that if I did not have sex with him, he would not take me to work." Greg Johnson also said that if I was late for work he would fire me. I looked at the clock and there was only 15 minutes until I was required to be at work. There was not enough time for me to walk or even call a cab. I felt I had to comply, or I

would lose my job. If I lost my job I couldn't take care of my kids. I believed that I did not have a choice and that Greg Johnson knew that. I felt like I was raped. When I arrived at work I was emotionally upset and crying.

Around the end of August of 1991, I spoke to another ("TACO BELL") manager on the phone, by the name of Jessica Jones. Jessica Jones had "worked" her way up through the store to become a manager.

During this conversation, I proceeded to tell Jessica Jones that Greg Johnson, a married man, had caused a female employee to become pregnant. I also told Jessica Jones of the stressful working situation and the constant sexual demands. I also informed Roxie Hall (manager) of what happened, who laughed and said she would do something about it. At the next store meeting, Greg Johnson informed the employees, that whatever happened in his store was to remain there or else. Greg Johnson was staring directly at me, when this was said. I was fired later that day.

I unsuccessfully attempted to commit suicide three times since this incidence. I have been forced to go on welfare, to take care of my children, when I didn't believe in welfare before this.

The sexual harassment and assault as stated above did not have any connection to my employment in serving food, taking money for food, cleaning up the store, or other duties that I was assigned. I am not now, nor have never claimed in any proceeding that I had been injured in the course of my employment or that the sexual harassment and assault arose out of or originated in my employment. I have never filed a claim for Workers' Compensation benefits with the Texas Industrial Accident Board. The behavior of these two managers as described above was personal toward me, and not related to my job as set out above.

In her suit against UPE, Mackey alleged eight separate causes of action as follows:

1. Assault;
2. Intentional infliction of emotional distress;
3. Negligent infliction of emotional distress;
4. Sexual harassment;
5. Tortious interference with contract;
6. Wrongful discharge;
7. Slander; and
8. Negligent supervision, training, and evaluation of Smith and Johnson.

█ The trial court granted a global summary judgment, and, therefore, summary judgment was granted against Mackey on all eight of her causes of action. Furthermore, since the trial court did not specify the grounds upon which it granted summary judgment on each of Mackey's causes of action, it was Mackey's burden to show that each independent argument alleged by UPE in its motion for summary judgment was insufficient to support the trial court's order. Summary judgment will be affirmed if any of the theories advanced by UPE are meritorious. *Insurance Co. of N. Am. v. Security Ins. Co.,* 790 S.W.2d 407, 410 (Tex.App.—Houston [1st Dist.] 1990, no writ).

In points of error two through eight Mackey alleges that the trial court erred in granting summary judgment in her causes of action based on assault, intentional infliction of emotional distress, sexual harassment, tortious interference with contract, wrongful discharge, and negligent supervision, training and evaluation. On appeal, Mackey has abandoned her cause of action for negligent infliction of emotional distress for the obvious reason that the Texas Supreme Court has held in *Boyles v. Kerr,* 855 S.W.2d 593 (Tex. 1993) that there is no general duty in Texas not to negligently inflict emotional distress. In addition, Mackey has abandoned slander as a separate cause of action; however, we will consider the alleged slanderous comments insofar as they are material to the other causes of action on appeal.

The function of summary judgment is to "eliminate patently unmeritorious claims and untenable defenses." *Gulbenkian v. Penn,* 151 Tex. 412, 252 S.W.2d 929, 931 (1952); *Mayhew v. Town of Sunnyvale,* 774 S.W.2d 284, 286 (Tex.App.—Dallas 1989, writ denied), *cert. denied,* 498 U.S. 1087, 111 S.Ct.

963, 112 L.Ed.2d 1049 (1991). The purpose of allowing summary judgment is to "provide a method of summarily terminating a case when it clearly appears that only a question of law is involved and that there is no genuine issue of fact." *Mayhew,* 774 S.W.2d at 287.

The standard for appellate review of a summary judgment in favor of a defendant is whether the summary judgment proof establishes as a matter of law that there is no genuine issue of fact as to one or more of the essential elements of the plaintiff's cause of action. *Gibbs v. General Motors Corp.,* 450 S.W.2d 827, 828 (Tex.1970). The movant has the burden to show that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Nixon v. Mr. Property Mgmt. Co.,* 690 S.W.2d 546, 548–49 (Tex.1985). Evidence favorable to the nonmovant will be taken as true in deciding whether there is a disputed material fact issue. *Id.* Every reasonable inference must be indulged in favor of the nonmovant and any doubts resolved in its favor. *Montgomery v. Kennedy,* 669 S.W.2d 309, 310–11 (Tex. 1984). In addressing the trial court's summary judgment action on each of Mackey's six remaining causes of action brought here on appeal, we will view the summary judgment evidence in light of these admonitions.

## APPLICABILITY OF THE TEXAS WORKER'S COMPENSATION ACT TO CLAIMS FOR ASSAULT AND INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

■ As one of its grounds for summary judgment, UPE claims that Mackey's injuries from assault and intentional infliction of emotional distress committed by Smith and Johnson were sustained in the course of her employment and were therefore barred by the exclusive remedy provisions of the Texas Worker's Compensation Act. However, Mackey claims that the conduct of Smith and Johnson were personal toward her, not related to her job of serving food, taking money for food, cleaning up the store, or other duties that she was assigned. Therefore, Mackey argues that she was not injured in the scope and course of *her* employment with

UPE, all as set out in her summary judgment affidavit. Mackey asserts that her common law claims for assault and intentional infliction of emotional distress are not barred by the Act because her injuries fall within an exception to coverage, which reads as follows:

> An insurance carrier is not liable for compensation if:
>
> . . .
>
> (4) The injury arose out of an act of a third person intended to injure the employee because of personal reasons and not directed at the employee as an employee or because of the employment.

Act of December 13, 1989, 71st Leg., 2nd C.S., Ch. 1, § 3.02, 1989 Tex. Sess. Law Serv. 14, *repealed by* Act of May 22, 1993, 73rd Leg., Ch. 269, § 5(2), 1993 Tex. Sess. Law Serv. 1275 (current version at TEX. LABOR CODE ANN. § 406.032(1)(C) (Vernon Supp. 1996)).

■ Two incidents of sexual harassment took place away from work. However, Mackey was at work when the alleged acts of "touching," "brushing up," fondling her breasts and buttocks, and other demeaning acts took place. Although one's employment may be the occasion for the wrongful act or may give a convenient opportunity for execution, an injury does not arise out of one's employment if the assault is not connected with the employment, or is for reasons personal to the victim as well as the assailant. *Highlands Underwriters Ins. Co. v. McGrath,* 485 S.W.2d 593, 595 (Tex.Civ. App.—El Paso 1972). The mere fact that the injury is caused by a co-employee is not controlling of the question of whether the injury is compensable under the Texas Worker's Compensation Act. *Shutters v. Domino's Pizza,* 795 S.W.2d 800 (Tex.App.— Tyler 1990, no writ). Whether Mackey's injuries were sustained in the course of her employment is ordinarily a question of fact. *Shutters,* 795 S.W.2d at 802.

From the summary judgment evidence, we conclude that a material issue of fact exists as to whether Mackey's injuries for assault and intentional infliction of emotional distress were sustained in the course of her employment. However, it is not necessary to re-

mand this case for a determination of that issue. If it were found that Mackey's injuries were sustained in the course of her employment, as defined by the Act, then her recovery under these two causes of action would be barred by the exclusivity of the Act. If Mackey's injuries were not sustained in the course of her employment and fall within the exception above-described, then Mackey would be free to assert her common law remedies for assault and intentional infliction of emotional distress. However, in the trial court and on appeal, UPE claims that even if Mackey's causes of action for assault and intentional infliction of emotional distress were not barred by the exclusivity of the Act, it was entitled to summary judgment in these two causes of action on Mackey's common law claims as well. For the following reasons, we agree.

### ASSAULT

■ Mackey claims that the assaultive acts of Smith and Johnson directed towards her were within the course and scope of their employment with UPE, and were thus imputable to UPE. UPE takes the position that the job duties of Smith and Johnson did not include any of the acts directed toward Mackey, and that if they committed the alleged acts of which Mackey complains, they were not acting within the course and scope of their employment. Therefore, UPE argues, such acts of intentional conduct cannot be imputed to UPE.

■ A longstanding Supreme Court case has been often cited for the proposition that it is not ordinarily within the scope of a servant's authority to commit an assault upon a third person. *Texas & Pac. Ry. Co. v. Hagenloh*, 151 Tex. 191, 247 S.W.2d 236 (1952). Assault is considered as an expression of personal animosity and not for the purpose of carrying out a master's business. *Tierra Drilling Corp. v. Detmar*, 666 S.W.2d 661 (Tex.App.—Corpus Christi 1984, no writ) (citing *Texas & Pac. Ry. Co. v. Hagenloh*). In order to impose liability upon an employer for the tort of its employee under the doctrine of *respondeat superior*, the act of the employee must fall within the scope of the general authority of the employee and must be in furtherance of the employer's business for the accomplishment of the object for which the employee was hired. *Dieter v. Baker Serv. Tools*, 739 S.W.2d 405 (Tex. App.—Corpus Christi 1987, writ denied). In *Valdez v. Church's Fried Chicken, Inc.*, 683 F.Supp. 596 (W.D.Tex.1988), the plaintiff alleged and the court found that she was assaulted and sexually harassed by a "team leader" of Church's Fried Chicken. However, the court found no liability upon the employer because the team leader was not authorized to use force, and because the sexual assault on the employee was purely personal.

■ Furthermore, when the servant turns aside, for however a short time, from the prosecution of the master's work to engage in an affair wholly his own, he ceases to act for the master, and the responsibility for that which he does in pursuing his own business or pleasure is upon him alone. *Dieter*, 739 S.W.2d at 407; *Tierra Drilling Corp.*, 666 S.W.2d at 663 (quoting *Galveston, Houston, and San Antonio R.R. v. Currie*, 100 Tex. 136, 96 S.W. 1073 (1906)). *See also, Gibraltar Savings Assoc. v. Turnbough*, 610 S.W.2d 515 (Tex.Civ.App.—Houston [1st Dist.] 1980), writ dism'd; *Calhoun v. Hill*, 607 S.W.2d 951 (Tex.Civ.App.—Eastland 1980, no writ).

■ In *Kendall v. Whataburger, Inc.*, 759 S.W.2d 751 (Tex.App.—Houston [1st Dist.] 1988, no writ), a food service employee struck a customer with a french-fry basket. There, the court found, as a matter of law, that the assault could not have been so connected with and immediately arising out of the employee's job of taking food orders and preparing and delivering food orders to customers so that his authorized employment tasks and the assault could have merged into one indivisible tort imputable to the master. *Id.* at 755. If the assault by an employee can be traced to a remote cause unrelated to the business of the employer, the employer cannot be held liable. *See Viking v. Circle K Convenience Stores*, 742 S.W.2d 732, 734 (Tex.App.—Houston [1st Dist.] 1987, writ denied) (assault was not in course and scope of employment for an employee to leave the store unattended and follow victim into public street to shoot him over personal rea-

sons); *Green v. Jackson,* 674 S.W.2d 395, 399 (Tex.App.—Amarillo 1984, writ ref'd n.r.e.) (not in course and scope when employee fought with customer over a long-simmering and rancorous personal animosity arising out of personal debt); *Tierra Drilling Corp.,* 666 S.W.2d at 662 (not in course and scope of employment for supervisor to assault employee over supervisor's dislike of Texans).

Mackey cites the case of *Frito–Lay, Inc. v. Ramos,* 770 S.W.2d 887 (Tex.App.—El Paso 1989), *rev'd on other grounds,* 784 S.W.2d 667 (Tex.1990) in support of her argument that under the summary judgment facts of this case Smith and Johnson were acting in the course of their employment with UPE. In *Frito–Lay,* a snack company employee shoved his company's customer while attempting to take the company's merchandise rack from the store after the customer informed the employee that he no longer wanted to carry the company's snack products. There, the court reasoned that a fact-finder could find that the employee was acting within the scope of his employment when he assaulted the customer while trying to retrieve company property. In a similar case, *Durand v. Moore,* 879 S.W.2d 196 (Tex. App.—Houston [14th Dist.] 1994, no writ), a doorkeeper of a night club, in his overzealous enforcement of the club's criteria for admittance, assaulted two customers who were waiting for admission. There, the court held that the doorkeeper was acting in the course of his employment in enforcing his employer's rules for admission.

The instant case is not like *Frito–Lay, Inc.* or *Durand,* but is analogous to *Kelly v. Stone,* 898 S.W.2d 924 (Tex.App.—Eastland 1995, writ denied). In *Kelly,* a senior billing clerk sued her office manager for sexual harassment, which included sexual advances such as rubbing her on the bottom. There, the court reasoned that the office manager's duties did not include the use or threat of physical force or physical conduct against employees, ·nor was he ever directed by a company officer to assault the billing clerk. The conduct of the office manager was simply not work-related. The court there stated that the office manager was clearly motivated by his personal obsession towards the billing clerk, and that his conduct was a pursuit of his own personal gratification. *Kelly,* 898 S.W.2d at 929.

In the instant case, there was no relationship between the assaultive acts of Smith and Johnson and their duties as managers of a food service restaurant. The summary judgment evidence shows that Smith and Johnson would "brush up" against Mackey, would touch her breasts, and fondle her buttocks. None of these alleged assaultive acts were directed by UPE officials. Furthermore, the summary judgment evidence shows that none of these acts were within the scope of Smith and Johnson's general authority as employees of UPE. Each was employed to manage a restaurant, which would include taking food orders, preparing the food, and delivering it to customers. There is simply no connection between these duties and the alleged sexual assaults directed towards Mackey. We, therefore, conclude that the alleged sexual assaults were solely the acts of Smith and Johnson, and that they were not acting within the scope of their general authority conferred by UPE at that time. There is no genuine issue of fact in that regard, and the trial court did not err in granting summary judgment on Mackey's cause of action for assault.

### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

Mackey also asserts that UPE is liable for intentional infliction of emotional distress arising from the alleged incidents. In *Twyman v. Twyman,* 855 S.W.2d 619 (Tex.1993), the Texas Supreme Court recognized the tort of intentional infliction of emotional distress as set forth in Section 46(1) of the Restatement (Second) of Torts (1965). The elements of intentional infliction of emotional distress are: (1) the defendant acted intentionally or recklessly; (2) the conduct was extreme and outrageous; (3) the actions of the defendant caused the plaintiff emotional distress; and (4) the emotional distress suffered by the plaintiff was severe. *Tidelands Automobile Club v. Walters,* 699 S.W.2d 939, 942–44 (Tex.App.—Beaumont 1985, writ ref'd n.r.e.). From the summary judgment proof outlined above, it is clear

that UPE did not authorize or direct any of the alleged acts of sexual harassment committed by Smith and Johnson against Mackey. Furthermore, when Smith and Johnson were hired, UPE explained its written policies against sexual harassment, notices of which were posted at each work place. The notices included instructions to report violations of this policy to UPE officials. Mackey did not respond with any summary judgment evidence showing that UPE intentionally or recklessly committed these acts which allegedly caused Mackey emotional distress. Thus, the first prong of the cause of action for intentional infliction of emotional distress has not been met. The trial court did not err in granting summary judgment on Mackey's claim for intentional infliction of emotional distress.

Points of error one, two, three and four are overruled.

## SEXUAL HARASSMENT

Next, Mackey charges UPE with sexual harassment resulting in a hostile work environment and an economic harm to her. She claims that such activity constitutes a violation of Article 5221k of the Texas Revised Civil Statutes, commonly known as the Texas Commission on Human Rights Act ("Texas Human Rights Act"). The pertinent provisions are as follows:

Sec. 5.01. It is unlawful employment practice for an employer:

(1) to fail or refuse to hire or to discharge an individual or otherwise to discriminate against an individual with respect to compensation or the terms, conditions, or privileges of employment because of race, color, handicap, religion, sex, national origin, or age; or

(2) to limit, segregate, or classify an employee or applicant for employment in a way that would deprive or tend to deprive an individual of employment opportunities or otherwise adversely affect the status of an employee because of race, color, handicap, religion, sex, national origin, or age.

TEX.REV.CIV. STAT. ANN. art. 5221k § 5.01(1)(2) (Vernon 1987).[3]

UPE responded that an employer can be held liable for sexual harassment only if the employer knew or should have known of the harassment in question and failed to take prompt, remedial action. UPE contends that the summary judgment evidence established the following: (1) that the wrongful conduct of Smith and Johnson was against UPE policy, (2) that UPE did not know of the harassment in question, (3) that Mackey never complained to UPE until after her termination, and (4) that Upshaw immediately initiated corrective measures after it was reported to him. Mackey contends that her summary judgment evidence establishes that she complained to UPE, but that it failed to take prompt remedial action. Furthermore, she argues that her summary judgment evidence shows that the harassment was pervasive and severe, that it altered the conditions of her employment with UPE, creating an abusive working environment.

When reviewing a case brought pursuant to the Texas Human Rights Act, we may look not only to the state statute, but also to the analogous federal provisions contained in Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* ("Title VII"). *Eckerdt v. Frostex Foods, Inc.,* 802 S.W.2d 70 (Tex.App.—Austin 1990, no writ) ("The stated purpose of the Texas Act suggested the state legislature intended it to conform to the policies contained in the federal act; therefore, we may consider how the federal act is implemented under clauses similar to those in issue in the Texas Act"). Because Texas has little case law interpreting and applying the Texas Human Rights Act, the federal court decisions addressing Title VII issues may provide us with guidance as well. *Speer v. Presbyterian Children's Home & Serv. Agency,* 824 S.W.2d 589, 593 (Tex.App.—Dallas 1991), *vacated,* 847 S.W.2d 227 (Tex.1993).

Sexual harassment is a form of employment discrimination prohibited by Title VII. *Meritor Savings Bank v. Vinson,* 477

---

3. Repealed by Act of May 22, 73rd Leg., R.S., Ch. 269, Sec. 5(1), 1993 Tex. Sess. Law Serv. 1275 (current version at TEX. LABOR CODE ANN. § 21.051 (Vernon 1996)).

U.S. 57, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986); *Jones v. Flagship Int'l,* 793 F.2d 714, 719 (5th Cir.1986) *cert. denied,* 479 U.S. 1065, 107 S.Ct. 952, 93 L.Ed.2d 1001 (1987); *Henson v. City of Dundee,* 682 F.2d 897 (11th Cir.1982). The application of Title VII discrimination claims to sexual harassment in the work place have been sufficiently outlined in *Flagship, Dundee,* and *Meritor,* and its background will not be again detailed here. Two types of sexual harassment are outlined in these cases: (1) harassment that, while not affecting economic benefits, creates a hostile or offensive work environment, and (2) harassment that involves the conditioning of concrete employment benefits on sexual favors. However, every instance of sexual harassment does not give rise to a Title VII claim against an employer. The complaining party must allege and prove a number of elements in order to establish his claim. These elements are:

(1) *The employee belongs to a protective group, i.e.,* a simple stipulation that the employee is a man or a woman;

(2) *The employee was subject to unwelcome sexual harassment, i.e.,* sexual advances, request for sexual favors, and other verbal or physical conduct of a sexual nature that is unwelcome in the sense that it is unsolicited or uninvited and is undesirable or offensive to the employee;

(3) *The harassment complained of was based upon sex, i.e.,* that but for the fact of her sex, the plaintiff would not have been the object of harassment;

(4) *The harassment complained of affected a "term, condition, or privilege of employment," i.e.,* the sexual harassment must be sufficiently pervasive so as to alter the conditions of employment and create an abusive working environment. In the type of harassment that involves the conditioning of concrete employment benefits on sexual favors, *i.e., quid pro quo,* the employee must show that the employer required sexual considerations from the employee in return for job benefits.

(5) *Respondeat superior, i.e.,* that the employer knew or should have known of the harassment in question and failed to take prompt remedial action.

*Flagship,* 793 F.2d at 719–720; *Henson,* 682 F.2d at 903–905.

In the instant case, elements one and three above are uncontroverted, that is, Mackey belongs to a protected group, *i.e.,* she is a woman, and the harassment complained of was based upon sex. However, as to elements two and four listed above, UPE argues that its summary judgment evidence shows that it investigated the alleged harassment and concluded that it did not occur; however, if it did occur, it was not sufficiently pervasive so as to alter the conditions of Mackey's employment, and it did not create an abusive working environment for her. Mackey's summary judgment evidence indicates that sexual advances, requests for sexual favors, and other verbal and physical conduct of Smith and Johnson of a sexual nature indeed took place. The evidence suggests that these gestures were unwelcome in the sense that they were unsolicited and uninvited, and that it was undesirable and offensive to Mackey. Mackey's supervisors regularly demanded sexual intercourse from her and others, brushed up against her, touched and fondled her breasts and buttocks, called her demeaning names in front of fellow workers. Furthermore, the supervisors sexually harassed other female employees in the work place and even got one pregnant. Mackey's supervisors told her and the other employees not to tell anyone what was going on at work. Such working conditions inevitably created an abusive and intolerable working environment at Mackey's work place.

Furthermore, Mackey's summary judgment evidence shows that her employment benefits were conditioned on sexual favors for her supervisors. Smith and Johnson were managers with authority to hire, fire, and set the number of hours of their workers. When Smith's requests for sexual favors were refused, Smith reduced Mackey's scheduled working hours, resulting in less pay. At one time, Smith told Mackey, "If I did it, I get more hours." Johnson used his authority to force silence on Mackey. She stated that she was "called into the office by Greg Johnson and he told me not to tell

anyone or he would fire my ass if talked." Johnson had the authority to evaluate employees' work performance and to reprimand them, which authority he used to coerce sexual favors. Mackey stated that when she denied sex to Johnson she would receive a written work-related reprimand. She stated that the more she denied Johnson, the more she was penalized. One day when Johnson gave Mackey a ride to work, he used his authority to hire and fire to force sexual intercourse from Mackey. We conclude from the summary judgment evidence outlined above that a genuine issue of fact exists relative to element number two, that is, whether Mackey was subject to unwelcome sexual harassment. It is further our conclusion that a genuine issue of fact exists in regards to element number four, both as to whether the sexual harassment created a hostile work environment and whether the harassment involved a *quid pro quo* in the work place, affecting Mackey's economic benefits.

We next turn to element number five, *respondeat superior*. UPE contends that even if the sexual harassment took place and was sufficiently pervasive so as to alter Mackey's employment conditions and create an abusive working environment, the element of *respondeat superior* is not present since UPE did not know nor should it have known of the alleged harassment. UPE contends that it was not informed of the sexual harassment until after Mackey was terminated, at which time it took prompt, remedial action. However, in her deposition, Mackey stated that before she was terminated, she informed UPE supervisor, Hall, about Smith and Johnson's sexual harassment. Hall allegedly laughed and said she would do something about it. However, Hall did nothing about it. Rather, at the next store meeting, Johnson informed all employees that whatever happened in his store "was to remain there or else." In her deposition, Hall denies that Mackey told her about the sexual harassment. Although the evidence does not show whether Hall was present at that meeting, she stated that she always attended the staff meetings because she supervised and evaluated the managers. At the time Mackey allegedly informed Hall of the sexual harassment, Hall had been with UPE thirteen years and held a supervisory position with UPE. She worked out of the home office as supervisor of training, with responsibilities over all five Taco Bell restaurants in Tyler and 100–136 employees.

It is true that Mackey must show that the employer, UPE, knew or should have known of the harassment in question and failed to take prompt remedial action. However, an employee can demonstrate that her corporate employer knew of the harassment by showing that she complained to "higher management" of the harassment, *Bundy v. Jackson*, 641 F.2d 934, 943 (D.C.Cir.1981), or by showing the pervasiveness of the harassment which gives rise to the inference of knowledge or constructive knowledge by the employer. *Taylor v. Jones*, 653 F.2d 1193, 1199 (8th Cir.1981). Hall, being the supervisor of training in all five stores, appears to have held a position of "higher management" and, according to Mackey's affidavit, Hall not only failed to restrain Smith and Johnson, but failed to bring the matter to the attention of other officers of the corporation.

Furthermore, UPE was generally aware of increased sexual harassment problems in the work place and had recently dealt with a sexual harassment problem in its own company which had involved Johnson. UPE argues that the summary judgment evidence shows that the conduct complained of was against the policies of UPE, that those policies and procedures for complaints were posted, and that Mackey did not follow those procedures. However, having a policy against discrimination and a grievance procedure, coupled with Mackey's failure to invoke that procedure, does not insulate UPE from liability. *Meritor Savings Bank v. Vinson*, 477 U.S. 57, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986). While those factors are relevant, they are not dispositive in this summary judgment case. Although Mackey knew she could "inform Mr. Upshaw of such harassment," she was "not aware of the grievance procedures to follow when sexually harassment (sic)." Moreover, a reasonable procedure for lodging complaints would have been

to inform one's supervisor which, in this case, was either Smith or Johnson, the alleged perpetrators. Based upon the above, we conclude that a genuine issue of fact remains regarding the fifth element of Mackey's sexual harassment cause of action, that is, whether or not UPE knew or should have known of the harassment in question and failed to take prompt, remedial action. Accordingly, Mackey's point of error five is sustained.

## TORTIOUS INTERFERENCE
## WITH CONTRACT

As further grounds for summary judgment, UPE alleges that Mackey has not stated a cause of action of tortious interference with a contract. Mackey charges that Smith and Johnson interfered with her working environment in order to deprive her of wages and employment benefits under an employment contract and to undermine her prospects for advancement in the future. Mackey attempts to impute such conduct to UPE. However, it appears from the summary judgment evidence that Mackey does not have an oral or written contract with UPE. UPE responds that the cause of action is without merit since there is no contract with which to interfere. Furthermore, UPE argues that, assuming *arguendo* that UPE and Mackey had entered into an enforceable employment contract, as a matter of law, there can be no interference with the contract by UPE. Tortious interference with a contract occurs when a person intentionally and improperly interferes with the performance of a contract with a third party. We agree. A party cannot tortiously interfere with his own contract. In Texas, employment contracts are protected from tortious interference by outsiders. *Sterner v. Marathon Oil Co.*, 767 S.W.2d 686 (Tex.1989). A party to a business relationship cannot tortiously interfere with himself; liability must be founded upon acts of an interfering third party. *Baker v. Welch*, 735 S.W.2d 548, 549 (Tex.App.—Houston [1st Dist.] 1987, writ dism'd). We hold that the trial court did not err in granting summary judgment for UPE on Mackey's cause of action for tortious in-

terference with contract. Accordingly, Mackey's point of error six is overruled.

## WRONGFUL DISCHARGE

Mackey also alleged wrongful discharge as a cause of action. The summary judgment evidence presented by UPE shows that Mackey had neither an oral or written employment contract with UPE, and that she was an "at-will" employee. Mackey presented no controverting evidence. Generally, in the absence of a contract to the contrary, an employer in Texas has the authority to discharge an employee with or without cause. The discharge of an employee requires no justification unless the employer's right to discharge an employee is limited by contract. *Reynolds Mfg. Co. v. Mendoza*, 644 S.W.2d 536 (Tex.App.—Corpus Christi 1982, no writ). The employment-at-will doctrine places no duties on an employer regarding an employee's continued employment. *Winters v. Houston Chronicle Pub. Co.*, 795 S.W.2d 723 (Tex.1990); *Jones v. Legal Copy*, 846 S.W.2d 922 (Tex.App.—Houston [1st Dist.] 1993, no writ).

Nevertheless, Mackey alleges that UPE breached its duty of good faith and fair dealing by terminating her employment. However, Texas law does not impose the duty of good faith and fair dealing on the employer in the "at-will" employment context. *Federal Express Corp. v. Dutschmann*, 846 S.W.2d 282, 284 (Tex.1993); *Winters*, 795 S.W.2d at 724 n. 2; *Day & Zimmermann, Inc. v. Hatridge*, 831 S.W.2d 65 (Tex.App.—Texarkana 1992, writ denied). Mackey's reliance upon such theory is without merit. *Casas v. Wornick Co.*, 818 S.W.2d 466 (Tex.App.—Corpus Christi 1991), *rev'd on other grounds*, 856 S.W.2d 732 (Tex.1993).

However, there are statutory exceptions to the employment-at-will doctrine, such as Section 5.01 of the Texas Human Rights Act. Its provisions make it unlawful for an employer to discharge an employee because of his or her sex. *Dutschmann*, 846 S.W.2d at 284.[4] Mackey therefore has a cause of action if the sexual harassment con-

---

4. For a discussion of the burdens of proof and production in employment discrimination cases, *see Texas Dept. of Human Services v. Hinds*, 904 S.W.2d 629, 636 (Tex.1995).

duct by Smith and Johnson resulted in her discharge. *Flagship,* 793 F.2d at 720.

UPE presented summary judgment evidence showing that Mackey had received several reprimands for being rude to customers and for being late to work. On the day of her discharge, Upshaw personally witnessed Mackey being rude to a customer and ordered Johnson to terminate her, which he did. However, the summary judgment evidence also showed that Johnson told Mackey that he would fire her if she talked about the sexual activity at the restaurant. On one occasion, when Johnson was giving Mackey a ride to work, he told her that she was going to have sex with him or he would not take her to work. Johnson told Mackey that if she was late for work, he would fire her. Since there was not enough time for Mackey to walk or even call a cab, she complied in order to keep her job. Mackey then complained of the sexual harassment to Jones, a fellow employee, whose response was, "Well, you know Greg." Mackey also complained to Hall, a supervisor. At the next employee meeting, which was on the day Mackey was terminated, Johnson said to the group, "My employees, what goes on in this store, stays in this store. And for all of you that's running your mouth, it's going to stop." Then, as Johnson was looking at Mackey, he stated, "Some of you with your big ass mouth, I'm going to get rid of you." Later that same day, assistant restaurant manager, Daryl Friend, told Mackey that Johnson had called and that she was fired. We conclude that Mackey's summary judgment evidence controverted UPE's version of her termination, and that a genuine factual issue exists as to whether Mackey was terminated in violation of the Texas Human Rights Act. Therefore, based upon the above, we hold that the trial court committed error in granting summary judgment for UPE on Mackey's cause of action for wrongful discharge. Accordingly, Mackey's point of error seven is sustained.

### NEGLIGENT SUPERVISION, TRAINING AND EVALUATION

Finally, Mackey alleges that UPE was negligent in its supervision, training, and evaluation of Smith and Johnson. Specifically, Mackey's claims against UPE include: (1) failing to adequately monitor Smith and Johnson's supervisory practices in their positions of store manager, (2) failing to detect and take action to deter the alleged sexual harassment by Smith and Johnson, and (3) failing to implement and monitor procedures for the handling of employee grievances. UPE responds by asserting that such a negligent claim by Mackey was barred by the exclusive remedy provision of the Texas Worker's Compensation Act. We agree. The Texas Worker's Compensation Act is the exclusive remedy for work-related injuries based upon negligence. *Reed Tool Co. v. Copelin,* 689 S.W.2d 404 (Tex.1985). Thus, the Act bars Mackey's claims based upon work-related negligence. *Jones,* 846 S.W.2d at 925–926. Again, Mackey alleges that the injuries she received from the conduct of Smith and Johnson were not work-related, and that their conduct was personal toward her. Therefore, she argues, her common law cause of action survives. If Mackey's injuries were sustained in the course of her employment, then her recovery would be barred by the exclusivity of the Act. If not, then the Act does not disturb Mackey's alleged common law remedies for negligent supervision, training, and evaluation, which we will now address.

Generally, the employer-employee relationship creates a duty on the part of the employer to control the employee's conduct. *See Otis Engineering Corp. v. Clark,* 668 S.W.2d 307, 309 (Tex.1983). An employer has a duty to adequately hire, train, and supervise employees. The negligent performance of those duties may impose liability on an employer if the complainant's injuries are the result of the employer's failure to take reasonable precautions to protect the complainant from misconduct of its employees. *See Dieter,* 739 S.W.2d at 408. Liability for negligent supervision is not dependent upon a finding that the employee was acting in the course and scope of his employment when the tortious act occurred. *Id.*

UPE's summary judgment evidence shows that it had a written policy statement against sexual harassment and that it was

posted at all of its stores. UPE required all new employees to read the store policy and to sign a statement acknowledging that they had read it and understood it. UPE stressed to all employees that sexual harassment was strictly against company policy. UPE conducted training sessions with its managers and employees at least twice per month, and at these meetings it was stressed that sexual harassment was strictly against company policy. More specifically, the managers were told what it included, *i.e.*, that it included physical touching, words with sexual connotations, and any sexual conduct which took place among employees or by employees towards customers. The managers were told that they were responsible for controlling such prohibited conduct. UPE established and implemented a grievance procedure which was also posted at each of the restaurants. An officer of the company visited each restaurant daily in order to monitor the activities of the employees. Supervisors from the home office visited each store daily and performed on-site supervision and evaluation of the managers and employees. UPE argues that its conduct in this regard conclusively shows that it acted as a reasonable, prudent employer and was not negligent in supervising, training, and evaluating Smith and Johnson. Mackey's summary judgment evidence does not controvert these facts. She simply relies upon the allegations of sexual harassment by Smith and Johnson. In order to avoid the adverse ruling of the trial court, it was necessary for Mackey to submit summary judgment evidence controverting these facts or specifying other acts or omissions of UPE showing that it failed to monitor Smith and Johnson's supervisory practices, failed to detect or take action to deter the alleged sexual harassment, or that it failed to implement and monitor procedures for handling grievances. *See Musgrave v. Lopez*, 861 S.W.2d 262, 264 (Tex. App.—Corpus Christi 1993, no writ). Mackey failed to do so. We therefore conclude that there is no genuine issue of fact regarding Mackey's alleged negligent supervision, training, and evaluation. Accordingly, we hold that the trial court did not err in granting summary judgment for UPE on this cause of action. Mackey's point of error eight is overruled.

### REMAINING POINTS OF ERROR

Mackey's point of error nine states: "The trial court erred in granting summary judgment for Appellee in its filing of response to Appellant's motion for summary judgment." Mackey's point and her argument under this point are not clear. Tex.R.App. P. 74(f) requires that the argument in the brief shall include: (1) a fair, condensed statement of the facts pertinent to such points ...; and (2) such discussion of the facts and the authorities relied upon as may be requisite to maintain the point at issue. Mackey's point of error and argument do not comply with the requirements of Rule 74(f); however, in the interest of justice, we will attempt to address this point.

UPE filed its motion for summary judgment with appropriate summary judgment evidence attached. Mackey then filed a response to the summary judgment motion and attached her summary judgment evidence. Thereafter, UPE filed "Defendant's Reply to Plaintiff's Response to Defendant's Motion for Summary Judgment" in which UPE presented to the trial court arguments and authorities supporting their summary judgment motion. UPE's response was simply procedural and added no new substantive matters. UPE's argument in its reply was that Mackey had not presented sufficient or competent summary judgment evidence controverting its summary judgment evidence on several of the causes of action alleged by Mackey. Mackey apparently argues that the granting of summary judgment based on UPE's response and argument would be an illegal shifting of the burden, and would constitute the granting of a default judgment in a summary judgment proceeding.

■■■ It is true, as Mackey argues, that summary judgment may not be obtained by default for lack of an answer or response to the summary judgment motion when the movant's evidence is legally insufficient. *Cotton v. Ratholes, Inc.*, 699 S.W.2d 203 (Tex.1985); *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671 (Tex.1979). However, when movant's summary judgment

evidence is legally sufficient, nonmovant must produce summary judgment evidence controverting the movant's summary judgment proof in order to avoid an adverse summary judgment ruling. *Musgrave*, 861 S.W.2d at 264. In this point of error, Mackey fails to recognize that UPE has presented legally sufficient summary judgment evidence, that it was clear, positive, direct, and free from inconsistencies, and could have been readily controverted by Mackey. Therefore, the evidence supports summary judgment in four of her causes of action as outlined above. Point of error nine is overruled.

■ In her tenth point of error, Mackey alleges that the trial court erred in refusing to allow her to file her third amended petition. On January 14, 1993, the trial court signed a scheduling order setting pretrial deadlines pursuant to the court's local rules. The order required all amended pleadings to be filed by November 10, 1993. Mackey did not file her third amended petition until December 3, 1993, which was untimely according to the court's order. Texas Rule of Civil Procedure 63 provides, in pertinent part:

> Parties may amend their pleadings ... by filing such pleas with the clerk at such time as not to operate as a surprise to the opposite party; provided, that any pleadings, responses or pleas offered for filing within seven days of the date of trial or thereafter, or after such time as may be ordered by the judge under Rule 166, shall be filed only after leave of the judge is obtained, which leave shall be granted by the judge unless there is a showing that such filing will operate as a surprise to the opposite party.

Tex.R. Civ. P. 63. Texas Rule of Civil Procedure 166 expressly provides, in pertinent part:

> The court shall make an order which recites the action taken at the pretrial conference, the amendments allowed to the pleadings, the time within which same may be filed, and the agreements made by the parties as to any of the matters considered ... and such order when issued shall control the subsequent course of the action,

unless modified at the trial to prevent manifest injustice.

Tex.R. Civ. P. 166; *see also ForScan Corp. v. Dresser Industries, Inc.,* 789 S.W.2d 389, 393 (Tex.App.—Houston [14th Dist.] 1990, writ denied).

Mackey argues that her third amended petition was filed well in advance of the seven-day rule provided for in Tex.R. Civ. P. 63. However, Mackey does not address the effect of Tex.R. Civ. P. 166, which provides that a scheduling order, when issued, shall control the subsequent course of action of the parties. Nevertheless, in the interest of justice, we will address the action of the trial court under the appropriate abuse of discretion standard. *ForScan Corp.,* 789 S.W.2d at 393.

In her third amended petition, Mackey added in several places the allegation that TBC was the employer of Mackey, Smith, and Johnson. However, Mackey had already made these allegations in various other paragraphs in her second amended petition, and furthermore, the allegations against TBC would not be material in this case against UPE. Also, in her third amended petition, Mackey added allegations that Smith and Johnson were "managers." This allegation had been previously asserted by Mackey in her second amended petition. The only other change made in her third amended petition was the elimination of her claim of negligent infliction of emotional distress. As stated above, such cause of action would be without merit since there is no general duty in Texas not to negligently inflict emotional distress. *Boyles,* 855 S.W.2d at 597.

■ Based on our review of the record, it appears that Mackey did not attempt to add any new causes of action in her third amended petition or factual allegations necessary to support subsequent proof. Moreover, the record does not show that the trial court refused to consider Mackey's allegations that Smith and Johnson acted as managers.

Furthermore, even if the trial court erred in disallowing the filing of Mackey's third amended petition, the error was harmless. The third amended petition did not add any

significant allegations to her case, nor would allowing the third amended petition to be filed afford Mackey any greater actual or theoretical basis for overcoming the summary judgment. Therefore, the error, if any, did not amount to such a denial of Mackey's rights that it would reasonably be calculated to cause or probably did cause, the rendition of an improper judgment. Tex.R.App. P. 81(b)(1). We conclude that the trial court did not abuse its discretion in refusing to allow Mackey to file her third amended petition. Mackey's point of error ten is overruled.

The judgment of the trial court granting summary judgment in Mackey's causes of action based on sexual harassment · and Mackey's cause of action based on wrongful discharge is **reversed and remanded** to the trial court for further proceedings in accordance with this opinion. In all other respects, the judgment of the trial court is **affirmed.**