NO. 07-11-0151-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL B

SEPTEMBER 18, 2012

_____

EDNA SCHMIEDING and WILLIAM SCHMIEDING,

Appellants

v.

MISSION PETROLEUM CARRIERS, INC.,

Appellee

_____

FROM THE 274TH DISTRICT COURT OF COMAL COUNTY;

NO. C2008-1013C; HONORABLE DIBRELL WALDRIP, PRESIDING

_____

*Memorandum Opinion*

_____

Before QUINN, C.J., and CAMPBELL and HANCOCK, JJ.

Edna Schmieding and William Schmieding (the Schmiedings) appeal from a judgment denying them recovery from Mission Petroleum Carriers, Inc. (Mission). They had sued Mission for injuries arising from an automobile collision with a Mission employee. When asked to determine culpability, the jury found that the employee was not negligent but that Mission was. However, the trial court entered judgment on behalf

of Mission upon concluding that it could not be negligent if its employee was not negligent. The Schmiedings appealed the judgment via seven issues. We affirm.

### *Issue One − Negligent Retention*

We are first told that the trial court erred because it refused to uphold the verdict on the basis that Mission negligently hired, supervised or retained the employee involved in the accident. Mission argues that the trial court had no option but to absolve it from liability given the finding that its employee was not negligent. Mission is correct, and we overrule the issue.

Before Mission could be found liable for negligently hiring, retaining, or supervising its employee, the employee must first engage in actionable misconduct. *See Wansey v. Hole*, No. 11-0348, 2012 Tex. LEXIS 559 (Tex. June 29, 2012) (stating that: "Though we have never expressly set out what duty an employer has in hiring employees, or said that a negligent hiring claim requires more than just negligent hiring practices, there is a broad consensus among Texas courts that such a claim requires that the plaintiff suffer some damages from the foreseeable misconduct of an employee hired pursuant to the defendant's negligent practices"); *Brown v. Swett & Crawford of Tex., Inc.*, 178 S.W.3d 373, 384 (Tex. App.–Houston [1st Dist.] 2005, no pet.) (stating that to prevail on a claim for negligent hiring or supervision, the plaintiff is required to establish not only that the employer was negligent in hiring or supervising the employee, but also that the employee committed an actionable tort against the plaintiff); *Gonzales v. Willis*, 995 S.W.2d 729, 739 (Tex. App.–San Antonio 1999, no pet.), *overruled in part on other grounds in Hoffmann-La Roche Inc. v. Zeltwanger*, 144 S.W.3d 438, 447-48 (Tex. 2004) (stating that an employer cannot be held liable for negligently hiring an

2

employee unless the employee committed an actionable tort); *Mackey v. U.P. Enters., Inc.,* 935 S.W.2d 446, 459 (Tex. App.–Tyler 1996, no writ) (stating that an employer has a duty to adequately hire, train, and supervise employees and the negligent performance of those duties may impose liability on an employer if the complainant's injuries are the result of the employer's failure to take reasonable precautions to protect the complainant from misconduct of its employees); *see also TXI Transp. Co. v. Hughes,* 306 S.W.3d 230, 240 (Tex. 2010*) (concluding that negligent hiring should have a similar requirement to negligent entrustment cases, which require that the employee's negligent conduct harm the plaintiff).

### *Issue Two – Negligence Per Se*

Next, the Schmiedings contend that the trial court erred in failing to instruct the jury that the employee's conduct was negligence per se.  Mission argues that the motor vehicle statute relied upon by its opponent, *i.e.* TEX. TRANSP. CODE ANN. § 545.151(a) (West 2011), involves obeying traffic control signals at an "intersection," and since the collision did not occur at such a location, it could not provide the foundation for negligence per se.  We agree with Mission and overrule the issue.

Per § 545.151, "[a]n operator approaching an intersection (1) shall stop, yield, and grant immediate use of the *intersection*: (A) in obedience to an official traffic-control device, including a stop sign or yield right-of-way sign."  *Id.* § 545.151(a) (emphasis added).  Furthermore, an "intersection" is defined as the "common area at the junction of two highways . . . ."  *Id.*  § 541.303(a) & (b).  The collision at bar did not occur within the "common area at the junction of two highways," and the Schmiedings do not argue otherwise in their brief.  Thus, the statute is inapplicable to the situation at bar.

3

### *Issue Three – Res Ipsa Loquitur*

The Schmiedings next argue that the trial court should have instructed the jury on *res ipsa loquitur*. Mission contends that 1) the complaint was not preserved and 2) the theory did not apply since *res ipsa* involves situations wherein the event or injury can only occur because someone was negligent and auto accidents can occur even in the absence of negligence. We overrule the issue.

The record discloses that at the time the trial court entertained objections to its charge, none were made by the Schmiedings about the absence of an instruction on *res ipsa loquitur*. This silence failed to comply with the directive that one must preserve charge error by "point[ing] out distinctly the objectionable matter and the grounds of the objection." TEX. R. CIV. P. 274; *see Carousel's Creamery, L.L.C. v. Marble Slab Creamery, Inc.*, 134 S.W.3d 385, 404 (Tex. App.–Houston [1st Dist.] 2004, pet. dism'd) (stating that merely objecting does not satisfy Rule 274 unless "the defect relied upon by the objecting party and the grounds of the objection are stated specifically enough to support the conclusion that [the] trial court was fully cognizant of the ground of complaint and deliberately chose to overrule it"). Since no objection was lodged by the Schmiedings, then they failed to preserve error as mandated by Rule 274.

### *Issue Four – Exclusion of Dr. Uribe's Testimony*

Next, the Schmiedings contend the trial court erred by not allowing an expert witness, Dr. Eduardo Uribe, to testify that Mission's employee fell asleep while driving. In turn, Mission posits that the trial court did not abuse its discretion by excluding the testimony since it failed to exclude alternate theories of causation and the testimony was unreliable. We overrule the issue.

4

The trial court conducted a hearing to assess Dr. Uribe's qualifications and determine the content of his testimony. Thereafter, it said:

> I think he can say -- he can exclude fainting or loss of consciousness because of leg injuries or loss of blood. He does go on to clarify that on page 19 as well. I don't think I'm going to --I'm not going to allow him to testify about saying that on this occasion he fell asleep. I'm not going to allow Dr. Uribe to testify that he steered his truck after he awakened from hitting a curb. I'm not going to allow him to testify one way or the other about a heart attack. In other words, I don't think he can testify
> that he can exclude heart attack.

and:

> This is what I said in regard to Uribe, that plaintiffs' expert Uribe would be allowed to opine that [the employee] did not faint or lose consciousness due to loss of blood or injury to the leg. And he's allowed to opine that [the employee] was sleep-deprived -- and basically that comes out of the records. He's allowed to opine that he suffered from chronic back pain, as well as other facts from the medical records. He's not allowed to opine that he actually fell asleep on the date and time in question. I don't understand how he could do that, but not allowed to opine that he excludes heart attack because one day he said it could have been and one day he said it couldn't have been.

and:

> Then not allowed to opine that [the employee] was awakened after hitting the curb and then steered his vehicle before colliding. I don't understand that conclusion either, but -- but my point, though, is to what I've told you he can opine, if he looked at the same records -- if -- if you want your expert to opine that he didn't faint based in part on the same records, why can their expert not make the same conclusion –

and:

> That's what his opinion was. I mean -- and I looked at the records or the report that you showed me yesterday. Precisely Dr. Uribe says on two different occasions -- one time he says he did not faint due -- or lose consciousness due to leg pain or injury to the leg. And then on another occasion he says due to loss of blood.

To such comments, counsel for the Schmiedings interspersed such utterances as: 1) "I'm good with all of that," 2) "Well, I wasn't quite sure about your ruling with Dr. Uribe

5

...," and 3) ". . . so his -- his -- his testimony is restricted to him saying that -- that he does have an opinion that -- that he fainted because of -- of a leg injury? I don't know that he was going to say anything else anyway, but forget it."  Then, the Schmiedings opted not to call the doctor.

The foregoing evinces no objections to the trial court's ruling.  Rather, it can be interpreted as illustrating that the Schmiedings were "good" with or accepted the decision.  And, if they had no objections to it below, they cannot complain about it on appeal.

Next, and to the extent that the Schmiedings suggest that the expert's opinion about the employee falling asleep immediately before or during the collision was founded upon a reliable premise, we must disagree.  It may well be, as they allege, that the employee suffered from chronic back pain and had a history of sleep difficulties.  It may be that being unable to sleep at night may cause one to fall asleep during the day.  Yet, one cannot rationally deduce from the fact the employee had a history of sleep difficulties that he was tired on the day of the accident or immediately before or during the accident.  Nor can one logically deduce that having problems sleeping meant the employee must have fallen asleep immediately before or during the accident.   So, the trial court could well have found the expert's opinion unfounded or unreliable.

### *Issues Five, Six and Seven* – *Gross Negligence and Evidence of Damages*

Via their last three issues, the Schmiedings contend that the trial court should have submitted an issue regarding whether Mission acted with gross negligence and should have admitted various testimony regarding their damages.  We overrule each contention.

6

As for the matter of the gross negligence instruction, we reiterate that Mission's employee was absolved of negligence by the jury while Mission was absolved of negligence by the trial court. Given those circumstances, and our inability to conclude that the trial court erred in so absolving Mission, we are unable to see how an issue on gross negligence was appropriate. Simply put, if Mission's conduct did not constitute negligence, that same conduct can hardly constitute gross negligence.

As for the evidentiary matters concerning damages, we need not consider them. The issues are irrelevant since Mission was not found to be liable for any misconduct upon which an award of damages can be based.

Accordingly, we affirm the judgment of the trial court.[1]


Brian Quinn
Chief Justice

---

[1]Based on our disposition of the Schmiedings' appeal, we need not address Mission's cross issues.